## CHARLESTON

YOKE *et al.*, *v.* SHAY *et al.*

Submitted June 19, 1899—Decided Nov. 18, 1899.

APPEAL AND ERROR.

    A decree of a circuit court founded on conflicting and contradictory testimony will not be disturbed unless plainly erroneous. (p. 44 )

Appeal from circuit court, Tyler County.

Action by A. J. Yoke and others. Judgment for plaintiffs. Defendants appeal.

*Affirmed.*

HALL & HALL and HUBBARD & HUBBARD, for appellants.

ROBT. McELDOWNEY, T. P. JACOBS, V. B. ARCHER, and ERSKINE & ALLISON, for appellees.

DENT, PRESIDENT:

The case of A. J. Yoke and others against J. W. Shay and others, from the circuit court of Tyler County, involves the construction of the following lease, which is copied here because of its singular character: "Agreement made and entered into the ——— day of March, A. D., 189—, by and between Homer L. Bowser and Marietta Bowser, his wife, of first part, county of Tyler, and state of West Virginia, part— of the first part, and W. J. Steele and John

Mathews, party of second part, witnesseth, that the said parties of the first part, for and in consideration of the sum of one dollar to —— in hand well and truly paid by the said party of the second part, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the said party of the second part, to be paid, kept and performed, ha— granted, demised, leased, and let, and by these presents do grant, demise, lease, and let, unto the said party of the second part, his heirs, executors, administrators, or assigns, for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines and of building tanks, stations, and structures thereon to take care of the said products, all that certain tract of land situate in Ellsworth district, Tyler county, and state of West Virginia, on the waters of ——, bounded substantially as follows: On the north by lands of Briggs & Dundee & Leonard Roberts, on the east by lands of C. C. Fluharty, on the south by lands of John Wetzel and John Devaui, on the west by lands of N. C. Fluharty and Joe Mercer, containing forty (40) acres, more or less; reserving, however, therefrom ——· acres around the buildings, on which no well shall be drilled by either party except by mutual consent. It is agreed that this lease shall remain in force for the term of five (5) years from this date, and as much longer as the rent for failure to commence operations is paid, and as long after the commencement of operations as said premises are operated for the production of oil or gas. In consideration of the premises, the said party of the second part covenants and agrees: 1st, to deliver in the pipe lines to the credit of the first parties, their heirs or assigns, free of cost, the equal $\frac{1}{8}$ (one-eighth) of all oil produced, and saved from the leased premises; and, 2nd, to pay three hundred dollars per year for the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises,—said payment to be made on each well within sixty days after commencing to use the gas therefrom as aforesaid, and to be paid yearly thereafter. While the gas from said well is so used, it's agreed that said second party is to have gas free for operating three farms leased by second party at this date. First party is to have gas free for house purposes. Second

party covenants and agrees to locate all wells so as to interfere as little as possible with the cultivated portions of the farm, and pay all damages to growing crops by reason of operations: provided, however, that this lease shall become null and void, and all rights hereunder shall cease and determine, unless a well shall be completed on the said premises within —— from the date thereof, or unless the lessee shall pay at the rate of ten dollars ($10.00) per month in advance for each additional month such completion is delayed, from the time above mentioned for the completion of such well until a well is completed. Such payments may be made direct to the lessor, or deposited to his credit in Tyler County Bank, at Sistersville. A failure to operate said lease after said well is completed, or pay said rentals, for more than 30 thirty days, shall render this lease null and void, and all rights of the second party shall cease. There is no rental paid on this lease, or while drilling or operating said lease. It is agreed that second party shall have the privilege of using sufficient water from the premises to run all necessary machinery, and at any time to remove all machinery and fixtures placed on said premises, and, further, shall have the right at any time to surrender this lease to first part—for cancellation, after which all payments and liabilities to accrue under and by virtue of its terms shall cease and determine, and this lease shall become absolutely null and void. Witness the following signatures and seals: Homer L. Bowser. [Seal.] Marrietta Bowser. [Seal.] W. J. Steele. [Seal.] John Mathews. [Seal.]

"State of West Virginia, County of Tyler—ss: I, W. E. Van Camp, a notary public of said county, do certify that Homer L. Bowser and Marrietta Bowser, his wife, whose names signed to the writing above, bearing date the 9th day of March, 1897, has this day acknowledged the same before me in my said county. Given under my hand this the 9th day of March, 1897. W. E. Van Camp, Notary Public."

The plaintiffs claimed that they had fully complied with this lease, by a due payment of the rents provided for therein, while the defendants' lessor claims they had forfeited by failure to pay rents, and released the premises. The circuit court sustained the contention of the plaintiffs,

and perpetually enjoined all operators under the second lease. The defendants appeal.

Under the lease the plaintiffs began paying their rentals forty-one days after its delivery, by deposit to the credit of the lessor in the Tyler County Bank, in Sistersville, according to the provisions of the lease. The lessor insists that the payment of rentals should have commenced within thirty days. While there are some other minor questions urged, this is the only one presented worthy of the consideration of the Court. Counsel attempt to object to the manner of deposit, because of the way in which the bank kept its books. With this the plaintiff has nothing to do. The lessor in the lease designated the bank as the proper depository, and all the plaintiff was required to do was to make the deposit and leave the payment to the bank as it saw fit. The certificate of deposit was proper as evidence thereof, and counsel's objection thereto is frivolous.

This lease was written by the lessor himself. Hence the reasons given in *Bettman* v. *Harness*, 42 W. Va. 433, (26 S.E . 271), (36 L. R. A. 566), why an oil lease should be construed most strongly against a lessee, does not apply in this case, but the construction should be to the contrary. It shows on its face that it is not strictly a lease to search for and produce oil, but a lease to obtain rent. It provides that "this lease shall remain in force for the term of five years from this date, and as much longer as the rent for failure to commence operations is paid." By the payment of the rent the lease is to be continued indefinitely, though no effort is made to find oil or gas. The primary object is rent, not oil or gas. This provision is in the granting part of the lease. Afterwards it is provided: "However, that this lease shall become null and void, and all rights thereunder shall cease and determine, unless a well shall be completed on the said premises within ——from that date thereof, or unless the lessee shall pay at the rate of ten dollars ($10.00) per month in advance for each additional month such completion is delayed." This provision was undoubtedly intended to fix a period for the beginning of the payment of rent, and not that the parties had any idea a well would be completed within the period. The two other leases exhibited as made at the same time with the lease in controversy provide that a well shall be commenced

within thirty days, or the payment of rentals begun. To require the commencement of a well within thirty days is not unreasonable, but to require the completion of a well in such time is unreasonable, unless, in deference to, *Cushwa* v. *Association*, 45 W. Va. 490, (32 S. E. 259), it is held that "completion" means commencement. The wording of these leases in this respect is rather against than in favor of the lessor's pretention. They are oil leases, while his is distinctly a rent lease. His lease shows that he was after rent and not royalties. It was natural for him to want the rent to begin at once,—hence the blanks in the lease,—while the lessees would want as long time as possible to begin paying. The lessor says it was to be thirty days; the lessees, ninety. If thirty, why the blanks? The lessor wrote the contract. Why, if the time was so definite, did he not fill it in before signing? This question depends wholly upon contradictory testimony, and it is the established rule of this Court, in cases of doubt, not to disturb the decree of the circuit court. It is impossible to say that a wrong conclusion was plainly reached. Under the holding of this Court in the case of *Richardson* v. *Ralphsnyder*, 40 W. Va. 15, (20 S. E. 854), this appeal is without possible justification, and the decree is therefore affirmed.

*Affirmed.*