# CHARLESTON.

McINTOSH v. AUGUSTA OIL Co. *et al.*

Submitted February 7, 1900—Decided April 14, 1900.

1. ATTACHMENT—*Equity—Bill—Decree—Jurisdiction.*
     Where a suit in equity is brought for the recovery of money, and an order of attachment is issued in the case in pursu-

ance of an affidavit made by the plaintiff, which attachment is levied on the defendant's land, and the bill alleges that the plaintiff, on his affidavit, as prescribed by law, has obtained from the clerk such order of attachment, which allegation is not denied in the answer, and there is no motion made to quash the attachment or demurrer to the bill, and the court hears the case upon the evidence, and decrees a sale of the land levied upon, this Court will not, on appeal, from said decree, reverse the case for want of jurisdiction in the circuit court. (p. 834).

2. DECREE— *Uncertainty—Erroneous.*
    A decree of a circuit court, founded on conflicting and contradictory testimony, will not be disturbed unless plainly erroneous. (p. 835).

Appeal from Circuit Court, Wirt County.

Bill by W. R. McIntosh against the Augusta Oil Company and others. Decree for plaintiff, and the oil company appeals.

*Affirmed.*

WILLIAM BEARD and T. A. BROWN, for appellant.
LOCKHART & MARTIN, for appellees.

ENGLISH, JUDGE:

W. R. McIntosh and James L. Peebles were in February, 1890, seised and possessed of several tracts of land located in West Virginia, on the waters of Standing Stone creek, in Wirt County, containing in the aggregate nine hundred acres, and on September 5, 1889, the said McIntosh, having control and management of said property, joined with Peebles in leasing said land to one William Skinner, of Pittsburg, Pa., for the purpose of drilling and operating for oil and gas, upon the usual conditions. The lease provided that one well should be completed within six months from the date of the lease, unavoidable accidents excepted, and, on failure to complete operations on a well within such time, said Skinner agreed to pay fifty dollars per annum after the time for the completion of such well. Skinner, having assigned his rights under said lease to the Augusta Oil Company as to thirteen-sixteenths of the same, the said oil company entered into an agreement with said McIntosh to begin and bore a test well on said land, beginning opera-

tions within thirty days from the date of said agreement, and continue boring as rapidly as possible until the stratum known as the "Berea grit" was reached, etc. In the event the said Skinner and Augusta Oil Company should fail or refuse to bore and operate said test well, subject to the conditions aforesaid, within one year from the date of said agreement, then the Augusta Oil Company agreed to pay to said McIntosh and Peebles one thousand dollars as liquidated damages for the breach of covenant, and operate said test well. In pursuance of this agreement the said oil company undertook to drill an oil well on said land, but, being so unfortunate as to get their drilling tools fast in the well, the undertaking was abandoned without further effort to complete the contract. On July 27, 1891, said McIntosh instituted a suit in equity against the Augusta Oil Company, James L. Peebles, William Skinner, and H. W. Hartman, trustee, filing his bill at the August rules following, in which he stated the facts above detailed, and prayed for a decree against said oil company for the sum of one thousand dollars for said liquidated and agreed damages. McIntosh also filed an affidavit in said suit for an order of attachment, stating as the sole ground for such attachment that the defendant oil company was a corporation, created and existing under the laws of West Virginia, but that no person could be found upon whom service of process could be made otherwise than by publication; and that the said oil company owns property and estate in said county of Wirt. In pursuance of this affidavit an order of attachment was issued and levied upon certain real estate in Wirt County as the property of said oil company. There was no motion to quash the affidavit or order of attachment, and no demurrer to the plaintiff's bill. The defendant oil company filed its answer, claiming that McIntosh, at the time said contract was entered into, on the 7th of February, 1890, represented to it that he had a good title to said land, and a right to lease the same, when in fact he had not paid the purchase money, and suits were pending for the sale of said land; and that he concealed these facts from it for the purpose of inducing it to enter upon the work of developing said territory, and investing its money in said land; 'that at the time said lease and

agreement were made, the Pennsylvania and West Virginia Lumber Company had instituted suit against the eight hundred acre tract, and a sale of the same had been directed, and that McIntosh had induced respondent to pay off the claim then due the plaintiff in said suit, promising to refund to it the money so advanced, which he failed to do, and it was compelled to have said land sold under the said decree in favor of said lumber company, to whose rights it had been substituted; that by consent and agreement between the defendant company and McIntosh work was discontinued on the well then being drilled on the McIntosh land, and the machinery moved to another lease near his land, and a well put down to a depth sufficient to test the territory; that said McIntosh never refunded the money paid for him, and in the meantime the land was advertised under a trust deed which McIntosh had executed on the same, and defendant was compelled to buy to protect itself,—all of which transpired before the territory could have been developed under said agreement.  Depositions were taken, and on May 20, 1898, a decree was rendered in the cause holding that the plaintiff was entitled to the relief prayed for; that the order of attachment be sustained, and that the oil company do pay the plaintiff one thousand one hundred and ninety-seven dollars and five cents, with legal interest thereon from May 20, 1898, until paid, and, in the event the oil company should not, within thirty days, pay the sum of money so decreed, directed a sale of the eight hundred acres attached in the cause upon the terms and in the manner therein prescribed.  From this decree the Augusta Oil Company obtained this appeal.

Now, the assignments of error in this case are, to a large extent, based on facts and circumstances which the contending parties sought to establish by the testimony in the case, which seems to be conflicting; and that this Court will not disturb the finding of the circuit court where the evidence is conflicting, unless plainly erroneous, has frequently been held.  See _Smith_ v. _Yoke_, 27 W. Va. 639; _Bartlett_ v. _Cleavenger_, 35 W. Va. 720, (14 S. E. 273); _Richardson_ v. _Ralphsnyder_, 40 W. Va. 15, (20 S. E. 854); _Yoke_ v. _Shay_, (W. Va.) 34 S. E. 748; and _Spurgin_ v. _Spurgin_, (W. Va.) 34 S. E. 750.  It is claimed in the assignments of

error that the oil company, by reason of the failure of the title of said McIntosh and the breach of the covenant for quiet enjoyment, could not safely operate said land, but the testimony is undisputed that said oil company left the plaintiff's land, and moved its machinery to the Rathbone land, because that lease was about to expire, and that said company was not prevented from putting down the well on plaintiff's land to the "Berea grit" on account of the liens existing against said land or the enforcement of such liens.    It is also claimed as error that the plaintiff should have been compelled to amend his bill because he made an arrangement to compromise his claim for one thousand dollars sued for in the case, because the plaintiff, in his testimony, admits that said oil company is entitled to a credit of two hundred dollars by reason of his portion of the purchase money arising from the sale of part of said land.    These facts, however, were known to the oil company, and it neither demurred to the bill nor brought the matter to the attention of the court; and, if it had been brought to the court's attention, it would have been only a credit on plaintiff's claim to that extent, and no cause for amending the bill.

It is next claimed as error that the plaintiff, by his affidavit or bill, does not show any grounds for attachment, and this suit should have been dismissed for want of equity. This assignment is met by the fact that no motion was made to quash the affidavit or attachment in the circuit court, and the plaintiff, in his bill, alleges that upon his affidavit as prescribed by law he has obtained from the clerk of said court an order of attachment against the defendant oil company, which allegation is not controverted in the answer.    The question raised as to the validity of the attachment comes too late.    In *Kesler* v. *Lapham*, 33 S. E. 289, this Court held that the supreme court will not consider questions not yet acted on by the circuit court; citing *Armstrong* v. *Town of Grafton*, 23 W. Va. 50; *Burke* v. *Adair*, *Id*. 165; *Alderson* v. *Commissioners*, 32 W. Va. 461, (9 S. E. 863); *Bank* v. *Parsons*, 42 W. Va. 137, (24 S. E. 554).    We also find the law stated in Drake, Attachm. § 36, as follows:    "No advantage can be taken of the defect after verdict, where the defendant appears, and pleads to

the merits;" citing numerous authorities. Now, the record presented for our consideration contains a proceeding by way of attachment in equity, which, so far as any pleading or ruling in the circuit court is concerned, remains unassailed; and, such being the case, the jurisdiction in a court of equity cannot be questioned. I am not unmindful of the fact that this Court held in the case of *Cresap* v. *Kemble*, 26 W. Va. 603, that, "if the court has no jurisdiction, it will dismiss a bill on the hearing, although there was no demurrer to the bill." This is true where, upon the face of the record, it is apparent that jurisdiction is wanting. Not so, however, where the record, on its face, entitles the plaintiff to be heard in a court of equity. In *Miller* v. *White*, 33 S. E. 332, it was held by this Court, that: "Where there is no service of process or appearance, and the seizure of property of defendant is the foundation of jurisdiction, defective or irregular affidavits for attachment, though they might reverse a judgment in the case, for error in departing from the statute, do not make the suit one without jurisdiction, if the court have jurisdiction in cases of that class. A total want of affidavit for attachment in such case would show there was no jurisdiction, but a mere insufficient averment in the affidavit would not," —citing *Cooper* v. *Reynolds*, 10 Wall. 309, 139 L. Ed. 91. In the case at bar we have an affidavit for attachment concerning the validity of which no question was raised in the circuit court. The order of attachment in pursuance of it was issued and levied; and with the allegation in the bill that the plaintiff, upon his affidavit as prescribed by law, has obtained from the clerk of said court an order of attachment, uncontroverted in the answer, the question of equity jurisdiction must be regarded as settled in this case. The decree complained of is affirmed.

*Affirmed.*