# CHARLESTON.

WEAVER *et al v.* AKIN *et al.*

Decided December 8, 1900.

1. APPEAL—*Facts in Issue.*

    The finding of the circuit court as to facts in issue, unless against the plain preponderance of the evidence, is conclusive upon this Court. (p. 460).

2. JOINT LESSOR—*Original Lease—Confirmation.*

    If one of several joint owners of a lease, to cure a defect therein, takes an additional lease in his own name, he will be presumed to be acting for the common benefit of all the owners, and that such additional lease is a confirmation of the original lease. (p. 461).

3. OUSTER—*Second Lessor—Unreasonable Delay.*

    To oust his co-owners of such benefit, the second lessor must show that, after they had notice by his acts or words that he intended to hold his lease adversely to them, they delayed for an unreasonable time in accepting the terms thereof. (p. 462).

4. RIGHTS AS TO LIABILITIES—*Benefit of Co-Owners.*

    If for 11 months, by his conduct, letters, and words, he leads his co-owners to believe that he has no intention of asserting the second lease in avoidance of the first, but during this period they continue mutually enjoying and developing the common property, he cannot suddenly, and without reasonable notice to them, set up sole ownership under the second lease, and in this manner destroy the common ownership under the first. The dealings between co-owners must be fair and open, and free from deception and evil appearances. (p. 462).

Appeal from Circuit Court, Monongalia County.

Bill by Charles A. Weaver and others against Jerome B. Akin and others. Decree for plaintiffs, and defendant Akin appeals.

*Affirmed.*

COL. W. W. ARNETT, for appellant.

CALDWELL & CALDWELL and COX & BAKER, for appellees.

DENT, JUDGE:

Jerome B. Akin appeals from a decree of the circuit court of

Monongalia County against him in favor of Charles A. Weaver and others.

The history of the case is as follows: On the 18th day of September, 1897, Charles Powell obtained from A. P. Haught the following lease: "In consideration of the sum of one dollar, the receipt of which is hereby acknowledged, A. P. Haught, of 'Batalle' district, 'Mongahale' County, West Virginia, first party, hereby grant unto Charles Powers, second party, his heirs and assigns, all the oil and gas in and under the following described premises, together with the right to enter thereon at all times for the purpose of drilling and operating for oil, gas or water and to erect and maintain all buildings and structures, lay all pipes and make all connections necessary for the production and transportation of oil, gas or water, taken from said premises, excepting and reserving however, to first party the one-eighth (⅛th) part of all oil produced and saved from said premises, to be delivered in the pipe line with which the second party may connect their wells, namely, all that certain tract of land, situated in the district of Battelle, county of 'Mongala,' in the State of West Virginia, bounded and described as follows, to-wit: On the north by lands of Merryman Price and others, on the east by lands of A. P. Johnson, on the south by lands of A. P. Johnson, on the west by lands of Benson Nickels and others, containing one hundred and sixty-one acres (161), more or less,—to have and to hold the above premises on the following conditions: If gas only is found second party agrees to pay three hundred dollars each year in advance, for the product of each well while the same is being used off the premises. Whenever first party shall request it, second party shall bury all oil and gas lines, and pay all damage done to growing crops by reason of burying and removing said pipe lines. No well shall be drilled nearer than ten rods to the buildings now on said premises without consent of first party. Second party to commence operations on this lease in thirty days. In case no well is commenced within specified time from this date, then this grant shall become null and void, unless second party shall pay to said first party three hundred dollars annually for each year thereafter such completion is delayed. The second party shall have the right to use sufficient gas, oil or water to run all necessary machinery for operation of said well, and also the right to remove all its property at any time. First party to have gas free for house use, providing there is more

gas at well than is necessary to run machinery. Second party to pay seven-eighths (⅞th) of all taxes above present valuation caused by oil operations on this lease. First party to furnish the rig now on this lease free to second party, but if first well is a paying one second party is to pay said A. P. Haught for said rig four hundred dollars,—that is, if the well produces one hundred barrels for ten days. In witness whereof, the parties hereto have hereunto set their hands and seals this 18th day of September, A. D. 1897. A. P. Haught, Charles Powers. Signed, sealed and delivered in the presence of Mrs. Mary Coleman, Clayton Coleman."

On the 18th day of January, 1898, Powers assigned a one third interest therein each to Fred L. Drew and Charles M. Root. On the same day the three assigned an eleven-sixteenths working interest in said lease and another lease called the Dalton lease to David J. States, Charles A. Weaver, Charles L. Straub, Sr., Trustee, J. M. Forse, George H. Jones and Edgar M. Lewis, who were to begin the development of the leases, by drilling the first wells thereon as consideration for their interests therein. These last mentioned parties then, to-wit: on the 21st day of January, 1898, entered into a contract with Jerome B. Akin and T. S. McCoy, to put down the first wells, for which they were to receive certain cash payments and said McCoy was to have a one-sixteenth undivided interest in said lease. McCoy assigned this one-sixteenth interest by two separate assignments to Akin. H. W. Hunter also purchased a three-eighteenths working interest in the two leases. Afterwards Akin acquired from some of the other parties fifteen-thirty-seconds, working interest in the one hundred and eleven acres, part of the one hundred and sixty acres included in the Powers lease from Haught. J. M. Sullivan also became the owner of a one-sixteenth interest in the one hundred and eleven acres of land by assignment from Drew, Root and Powers, and V. T. Clayton became the owner of the one-twelfth interest under the two leases from Powers, being all that was owned by him. In this manner these parties all became jointly interested in these leases. There is no dispute as to what are the interests of the various parties in the leases and this short statement is given to show that they were interested as co-owners. Akin proceeded to develop the lands according to his several contracts with the parties, when learning that Haught

was dissatisfied with the Powers lease and claiming it to be void he entered into the following agreement with him:

"A. P. Haught to J. B. Akin.—Agreement: This article of agreement, made and entered into this 23rd day of June, A. D. 1898, by and between A. P. Haught, of the district of Battelle, county of Monongalia and State of West Virginia, party of the first part, and J. B. Akin, of Washington, Pennsylvania, party of the second part, witnesseth:

"That whereas, first party believes that a certain lease given to Charles Powers, bearing date of September 18th, A. D. 1897, and of record in deed book No. 46, page 285, records of Monongalia County, West Virginia, is void, the said first party does herein and hereby lease, give, grant; and by these presents does lease, give and grant to the said second party, his heirs and assigns, the said farm as above described, together with all rights, privileges and stipulations granted and given therein to Charles Powers, and upon the same terms and conditions, excepting that this lease shall be made for the term of thirty-five years from this date, ending and yielding the said premises over to the said first party at the expiration of this thirty-five years. In consideration of which the second party hereby pays to first party the sum of one thousand dollars, the receipt whereof is hereby acknowledged, together with a further consideration that the second party commences operations on one well and proceeds to drill said well to completion into the Gordon sand at once, and in case the second party abandons said farm by removing all machinery and oil well supplies off of said premises that this agreement shall be re-assigned and turned over to A. P. Haught at once; and it is further agreed between the parties hereto that all matters and manner of detail shall enter into this lease and be a part hereof, with the above exceptions, identical to and of from said first party in this agreement to the second party as did the above lease from A. P. Haught to Charles Powers, as given on the above date, September 18, A. D. 1897, and shall be a part of said lease. In testimony wherof, the said A. P. Haught and J. B. Akin have hereunto set their hands and seals this 23rd day of June, A. D. 1898. A. P. Haught, (Seal). J. B. Akin (Seal). Witness: W. E. Dascomb."

Then he proceeded with the development of the property. He claims that he took this last agreement solely for his own protection, but that he expressed his willingness all the time

that his co-owners should share it with him, but they indicating their willingness to do so after going on with the developments of the property as though it were the common property of all for about eleven months, he determined suddenly to claim the whole of the Haught property as his own under the last lease and repudiate his co-owners and all his own interests under the Powers lease under the theory that the same was void. And thereupon this suit was instituted to enforce a sale of the common holdings and distribute the proceeds. The sole question presented to this Court is as to the legal right of Akin to repudiate his co-owners and claim the whole property himself. There is a mixed question of fact and law. So far as the facts are concerned, they being founded on contradictory and conflicting testimony, the finding of the circuit court in relation thereto will not be disturbed by this Court as it has so often and repeatedly held.

The only real fact in dispute was as to whether Akin made the last agreement with Haught solely for himself or for the benefit of all his co-owners and so led them to believe up until just before he repudiated such an arrangement. The circuit court has found against him and determined his pretentions to the contrary are wholly unsustained. The preponderance of the evidence fully bears out this conclusion. The rule established by the repeated decisions of this Court both as to law and equity is that the finding of any fact by the circuit court will not be disturbed, unless it is contrary to the plain preponderance of the evidence. In equity are the late cases, *Gillespie* v. *James,* decided at this term; *McIntosh* v. *Augusta Oil Co.,* 47 W. Va. 832, (35 S. E. 860) ; *Camden* v. *Dewing,* 47 W. Va. 310, (34 S. E. 911) ; *Whipkey* v. *Nicholas,* 47 W. Va. 35, (34 S.E. 751) ; *Spurgin* v. *Spurgin,* 47 W. Va. 38, (34 S. E. 750) ; *Yoke* v. *Shay,* 47 W. Va. 40, (34 S. E. 748) ; *Fitzgerald* v. *Windmill Co.* 42 W. Va. 570; *Richardson* v. *Ralphsnyder,* 40 W. Va. 15; *Bartlett* v. *Cleavenger,* 35 W. Va. 720; *Smith* v. *Yoke,* 27 W. Va. 639. And at law, *Trump* v. *Tidewater Coal and Coke Co.,* 46 W. Va. 238; *Nysell* v. *Coal and Manufacturing Co., Id.* 158; *Young* v. *Railroad Co.,* 44 W. Va. 218; *Gilmer* v. *Sydenstricker,* 42 W. Va. 52; *Akers* v. *DeWitt,* 41 W. Va. 229; *Johnson* v. *Burns,* 39 W. Va. 658; *Gunn* v. *R. R. Co.,* 42 W. Va. 681; *Maple* v. *John, Id.* 30; *Talbott* v. *Railroad Co., Id.* 560. Nor is there anything in the documentary evidence that contravenes this conclusion. The lease to Powers after the thirty days were a mere option deter-

minable at the will of the lessor. It is not governed by the case of *Buttman* v. *Roberts,* 45 W. Va. 143, but by the case of *Snodgrass* v. *South Penn Oil Co.,* 35 S. E. 820. There was no binding obligation on the lessee to pay the rent. To make his lease good he must pay the rent in advance. *Eclipse Oil Co.* v. *South Penn Oil Co.,* 47 W. Va. 84, (34 S. E. 923). Otherwise the lessor could avoid it at his pleasure. It was not however void for want of a definite time to run, as the rental payment fixed its life. As long as the rent was paid the lease would run. To destroy its optionary character the rent must be paid in advance. Akin did wisely in taking his lease at the time he did, for he thereby confirmed the Powers lease and prevented its annulment. In doing so he was bound to act for his co-owners unless he gave them ample notice of his intentions otherwise. It is well settled that a co-owner of property finding a defect in the common title cannot purchase an outstanding title except for common benefit. "This rule is based on the community of interest in a common title creating such a relation of trust and confidence between the parties that would be inequitable to permit one of them to do anything to the prejudice of the others in reference to the common property. The principal applies equally to joint tenants, tenants in common, co-parceners and all others having a common interest." *Forrer* v. *Forrer's Exr.,* 29 Grat. 144; *Gilchrist* v. *Beswick,* 33 W. Va. 168; *Bowers* v. *Dickinson,* 30 W. Va. 716; *Battin* v. *Woods,* 33 W. Va. 168. Akin therefore cannot claim to have made the lease for himself. He must be held to have made it for the common benefit. This he does not deny, but claims that his co-owners repudiated his purchase and refused to accept the benefit thereof. This is a fact found against him by the circuit court. In the case of *Cecil* v. *Clark,* 44 W. Va. 660, it was held that "before a co-tenant can be held to have abandoned the benefit of the purchase, it must appear not only that he knew of the purchase, but of an adverse claim to its exclusive benefit set up by his co-tenants. He may reasonably presume the acquisition was made to support not to defeat the common title." Before abandonment can become conclusive so as to defeat a suit for partition the co-owners must delay an unreasonable time after they have notice that the purchaser of the adverse title intends to hold it for his exclusive benefit, that is an unreasonable time after they have been denied participation therein and there is a material change in the condition of the property

or the circumstances of the parties. Akin fails to show any notice to the parties that he intended unless they accepted his lease to hold the same as exclusive property until after the completion of the wells, and then he says because of the obstinacy of Haught regarding the Powers lease void, he determined to claim the property for his own exclusive benefit under his own lease. This was the first time that he brings home notice to them of his intention in this regard. By his conduct up until this period they were fully led to believe that the property was their common property according to their original agreements when he suddenly determines to claim the whole thereof. It was his duty to have given them notice that unless within a certain reasonable time they accepted the terms of his lease he would deem the same abandoned by them, and would claim the exclusive benefit thereof, and until he did so they had the right to presume he was acting for the common benefit. *Cecil* v. *Clark,* cited. He had no right to appear to acquiesce in their common ownership and then after deluding them in this way for eleven months suddenly change his notion and claim the whole exclusively. This eleven months cannot be considered a part of the reasonable time in which they were allowed to accept the benefits of his purchase, for during all this time he failed to assert it adversely to them. The reasonable time does not begin to run until he makes known his intention to hold adversely, either by acts or words so explicitly as will put them on their guard. Co-ownership requires open dealing with each other. Neither may deceive and defraud the other, either by silence, acts or words. *Gilchrist* v. *Beswick,* cited. Not having notified them before of his hostile intentions they were entitled to a reasonable time after they discovered them to accept the benefits of his lease which they did by promptly instituting this suit to be admitted to such benefits. The relief sought cannot be denied them.

The decree is affirmed.

*Affirmed.*