# CHARLESTON.

## Lovett v. Eastern Oil Company.

Submitted February 9, 1910.   Decided February 14, 1911.

1. Deeds—*Consideration.*

   One dollar recited in a deed for consideration is a sufficient valuable consideration.

2. Tender—*Sufficiency.*

   A tender is not ineffectual only because upon condition that a receipt shall be given, under facts in law entitling the party to such receipt as an evidence of payment.

3. Mines and Minerals—*Oil Leases—Construction.*

   The oil lease in this case is not a mere option, without valuable consideration, constituting only an estate at will in the lessee, determinable at the will of the land owner without cause.

4. Principal and Agent—*Liability for Acts of Agent.*

   An oil lease provides that rentals may be paid to the credit of the lessor into a bank. The bank is the lessor's agent to receive the money, and the lessee is not responsible for the mode of entry to the lessor's credit or its disposition by the bank.

5. Payment—*Acts Constituting—Deposit of Money in Bank.*

   An oil lease provides that rentals may be paid in a bank to the credit of the lessor, and the lessee deposits the money in the bank accompanied by a blank receipt for the lessor to sign showing such payment, but without any requirement on the part of the oil company that it must be signed by the lessor as a condition precedent that the money shall go to the absolute credit of the lessor; such deposit is an effectual payment by the lessee, and the requirement by the bank that the lessor sign the receipt will not defeat the efficacy of such deposit.

6. Same—*Acts Constituting.*

   An oil lease provides that rentals may be paid into a bank to the credit of the lessor.   If the lessee deposit the money accompanied by a receipt stating that the money is paid in full of rental for a certain year, there being no objection by the lessor to its contents, the fact that a demand is made that the receipt be signed by the lessor before the money be entered on the bank books to his absolute credit, will not render the deposit ineffectual as a payment of the rental.

7. Equity—*Parties—Bringing in Parties by Amendment.*

   When a person not a party to a suit in equity has an interest in its subject matter, though it do not appear in the record, but

is shown by a deed or otherwise, the court may require him to
be made a party by amended bill. There is no error in so doing.

Appeal from Circuit Court, Lewis County.

Bill by James B. Lovett and wife against the Eastern Oil
Company and others. Decree of dismissal and plaintiffs appeal.

*Affirmed.*

*E. A. Brannon* and *Robert L. Bland,* for appellants.

*G. M. Fleming* and *Brannon & Stathers,* for appellees.

BRANNON, JUDGE:

In October, 1907, James B. Lovett and wife brought a
chancery suit in the circuit court of Lewis county against
Eastern Oil Company and West Virginia Central Gas Company
to cancel a lease made by Lovett and wife to Eastern Oil Com-
pany dated 16th May, 1899, for oil and gas, assigned to West
Virginia Central Gas Company, of a tract of .land, and the:
court refused the relief asked and dismissed the bill, and Lovett
and .wife appeal to this Court.

The lessee did not take possession or do any work of develop-
ment of oil or gas prior to the institution of this suit, but did
later enter and drill a gas well. On the 19th day of August,
1905, Lovett and wife made a writing, which was recorded in
the office of the clerk of the county court, declaring . that they
repudiated the lease and declined to accept any further rental
or payments under it, and declaring an absolute forfeiture
thereof, not only on account of the default in the performance
of its conditions, but also because the same was void for want
of mutuality. The lease was for a term of ten years and for
as much longer thereafter as oil or gas should be found in
paying quantities. It contained. provisions for the payment of
a royalty of one eighth of the oil produced and one hundred
dollars per year for each gas well. It provided that "rentals
on this lease may be paid direct to first parties or deposited to
their credit in the Citizens Bank of Weston." It contained also
the following provisions: "It is further agreed, That the
second party shall drill a well within three months from the
date hereof, or thereafter pay the party of the first part Ninety
dollars per annum rent in advance for said premises from the

time fixed for the drilling of the well aforesaid until a well shall be drilled.

The lessee, his heirs or assigns may surrender this lease at any time upon notice to the first party of his intention so to do, and notice of such intention may be given by a failure on the part of the second party to pay the rent when due.

Upon notice so given this lease shall be null and void and the parties of the first part hereby waive all right of action for damages by reason thereof and all money which has been paid shall be in full for all damages.

The parties then shall mutually release each other from their covenants in this lease and from all rights, claims, moneys, or action due or to become due." The oil company paid into the bank six rentals of $90 each, which Lovett received, and on the 10th day of August, 1905, the oil company paid into said bank $90 in advance for the year running from 16th August, 1905, to 16th August, 1906, and it paid into the bank three further rentals paying down to August 16, 1909, a few days before each installment was due. As stated Lovett accepted six yearly rentals paid in lieu of development; but he did not accept that rental paid in bank on the 10th of August, 1905, for the year ending 16th August, 1906, and he has not accepted any subsequent installment and has declined to do so, claiming the right to annul and repudiate the lease. He knew of these payments into bank. Lovett bases his claim to repudiate this lease on the theory that it is but a mere option which he could revoke at any time because of the failure of the lessee to develop oil and gas. He claims that as the lease gives the oil company right to surrender the lease at any time, he has the correlative right of cancellation. He claims that as the oil company had right to surrender the lease either expressly or by failure to pay the rental and be released from obligation, there is no mutuality of obligation, no consideration binding, and that he had right to declare the lease at an end. We are cited for this contention to the cases of *Eclipse Oil Co.* v. *South Penn Oil Co.,* 47 W. Va. 84, and *Trees* v. *Eclipse Oil Co., Id.* 107. I dissented in both those cases, as will appear in 34 S. E. 932 and 934, though my dissent was omitted in the official State Report from negligence of some one connected with the publication. But this is not material. Those cases proceed upon

the idea that there were no binding leases; that there was no obligation, no promise on the part of the lessee to pay money or do anything, and a privilege to surrender the leases without payment of anything, at mere will; that they conferred only an estate at the will of the lessee, and that the etate being one at will it might be terminated by either party; that there was no consideration for the lease. Those cases do not control this case. Why? Reference to Judge DENT's opinion in *Lowther Oil Co.* v. *Guffey,* 52 W. Va. at page 91, will show the difference between the leases in those cases and the lease involved here. So will the opinions in *Harness* v. *Eastern Oil Co.,* 49 W. Va. p. 250, and *Pyle* v. *Henderson,* 65 *Id.* p. 42. In the lease before us we find a valuable consideration paid, as it recites the payment of one dollar down. Will it be said that that small sum is not a sufficient consideration to support the lease? We said that it was sufficient, as consideration, to make the lease good in *Lowther Oil Co.* v. *Guffey, supra.* "The mere inadequacy of a consideration does not render it insufficient except as a circumstance bearing on the question of fraud or undue influence. A valuable consideration, however small and nominal, if given or stipulated for in good faith is, in the absence of fraud, sufficient to sustain a parol contract. Accordingly, a grantor who has been tendered one dollar as a consideration for his deed, can not have it set aside for want of consideration where it does not appear that he expected any other." 1 Beach, Modern Law of Contracts, § 5. Look back at hundreds of deeds through hundreds of years and you will find them stating one dollar as a valuable consideration. To say that such a consideration acknowledged under seal is not good would be to overthrow myriads of deeds. The parties have chosen to treat it as a sufficient consideration; they have contracted that it shall be such, and no court in the absence of fraud, can nullify their contract. The fact that it is so small a consideration will not render the lease a mere option. The fact that a valuable consideration was paid for such a lease differs this case from *Eclipse Oil Co. Case* above cited, as was stated in *Lowther Oil Co. Case,* 52 W. Va. p. 91, and in *Pyle* v. *Henderson,* 65 *Id.* p. 41. But that one dollar is not the only consideration; for the lease provides that the lessee shall drill wells, and from them pay royalty, or on failure to do that pay $90 per year. Lovett thus

had the chance of getting returns in royalties, or in lieu of them, $90 each year. Until the lessee should exercise the right of surrender the rental was payable. The mere fact that this right of surrender existed does not deprive the lease of having a valuable consideration on which to rest. The oil company did not exercise that right, but year after year paid this rental. So that the lessee not exercising the privilege of surrender paid large amounts as yearly rental, accepted by Lovett, and this was valuable consideration, in addition to the one dollar, and would bar Lovett from holding the lease a mere option without consideration, a mere estate at will determinable whenever Lovett chose. I say that the promise to develop and pay royalty is also valuable consideration, because trouble on the part of the lessee, damage of loss from failure to find oil, chance of development which might yield Lovett returns, and promise to pay money made consideration. *Jackson* v. *Hough,* 38 W. Va. p. 240. But aside from this there is valuable consideration.

Lovett's bill and declaration of forfeiture not only proceed on the idea just discussed that the lease was a mere option, creating an estate at will, but also that the oil company failed to pay rental as required by the lease. The company paid in bank six rentals of $90 each, which Lovett accepted, and on the 10th day of August, 1905, the company paid in bank $90 in advance for the year beginning 16th August, 1905. Three days after that payment Lovett made a written declaration of forfeiture. This was never served on the lessee. Its record was not notice. Lovett claims right to end the lease without notice. But I need not have mentioned this, as he would not have right to cancel with notice. It is needless to say that if that payment is good, Lovett could not declare a forfeiture when he did, only a few days after the commencement of the year, because that payment paid up to the 16th August, 1906, and Lovett could not declare a forfeiture during the year for which the payment had been made. But Lovett's theory or contention is that that payment in the bank was not actually to his credit, but that it was accompanied by a receipt for that installment for that year, and that the company made a payment conditional, that is, that the money was not to go to the absolute credit of Lovett until he signed that receipt, whereas the contract demanded that the payment should be to his absolute

credit; in other words the company had no right to demand a receipt preliminary to the placing of the money to his credit. Lovett cannot sustain this contention. One reason is that, even if the company made the signing of the receipt a condition precedent, that would not affect the payment, because the demand of a receipt would not be unreasonable. The company would have a right to it as evidence of payment. No objection was made to the amount of payment. We see no reason in Lovett's refusal on that score to receive the money. No reason is given. Did Lovett only want to get out of the contract? Is this not so in the eye of equity? He virtually admits it in his deposition. Was that his only reason? The demand of a receipt, there being no dispute as to its amount or terms, will not affect a tender. True this receipt states that it is in full for the rental for the year ending 16th August, 1906, in accordance with the terms of the lease. Lovett cannot deny this. Under the law of tender I can see that if that statement were not true, if Lovett had the right of refusal and the right of cancellation, he could refuse the money; but we have shown that he had no right of cancellation, and therefore the statement that there was an annual rental under the lease did not hurt him. Where a proper payment is made the debtor may demand a receipt as evidence of payment. 1 Beach Modern Law of Contracts, § 322. It would seem unreasonable to say that when a court finds that the paper is only what the party had a right to ask, the demand of it would depreciate the tender; but I do not know that the strict principles of tender apply here. A tender not invalid because conditioned upon surrender of the note or a discharge of a mortgage, because the condition is one which, on payment, the creditor or mortgagee is bound to perform. Clark on Contracts, 642, note 3; Page on Contracts, § 1421. Rather is not the question this, Has the party, under the circumstances, complied with his obligation and thus performed the contract? In what I have said I have assumed that the company demanded a receipt; but the evidence is clear that the company simply sent a blank receipt along with the money and never instructed the bank to demand it as a condition precedent to putting the money to Lovett's credit. The cashier of the bank says that no such condition was exacted by the company, but that it had been the usual course of business;

that the bank when oil lease money was paid in made it a rule to have the receipt signed, and that in this instance the money came to the bank and was put to the credit of Lovett, not in the account which he kept in the bank, his checkable account, but was put to his credit on "our books in an oil lease rental account." Now, this was the bank's mode of doing business. By the contract Lovett made the bank his agent to receive payment and this mode of entry was the bank's manner of doing business, not the company's. The oil company was not responsible for the manner of the bank's doing business. Lovett's agent could dispose of the money in such process as it thought fit for prudence and safety. *Yoke* v. *Shay,* 47 W. Va. 43; *Mallory* v. *Friend,* 52 *Id.* 53. I do not find that Lovett ever made this receipt an objection to acceptance of the money. His motive was simply to cancel the lease on the claim of his right to do so under the surrender clause. The lease had not the common clause of forfeiture for non-payment but practically the same as under it non-payment would operate as a surrender. But we hold that payment good. Lovett had but to reach out his hand for the money and get it. And if he had refused the receipt that refusal would be unreasonable and such as a court of equity would not justify. It is not just or consistent with equity principles to ask a court of equity to forfeit a valuable property, after the company has taken possession and spent thousands of dollars in a gas well, losing it to the company. The company complied with its obligation of payment and none but the most technical objection exists for the forfeiture sought to be enforced. It is unsubstantial. A court of equity cannot yield to it. It is against forfeiture and certainly won't find a cause in a mere shadow. The company has paid its money. There it is for Lovett.

Pending the suit the defendant made the suggestion to the court that the Consolidated Natural Gas Company of West Virginia, a corporation, held by assignment the lease and moved the court to require plaintiffs to amend their bill and make that corporation a defendant, and exhibited to the court a deed book from the county clerk's office showing a deed of assignment from the West Virginia Central Gas Company to said Consolidated Natural Gas Company of West Virginia and the court required the plaintiff to amend his bill. And this is

assigned for error. This order was really for the benefit of the plaintiff, because if he should succeed it would be to his interest to have the Consolidated Company before the court to be bound by a decree of cancellation, and thus save him another law suit. But aside from that it was proper, certainly not harmful, to make the Consolidated Company a party. *Talbott v. Custis,* 65 W. Va. 132. Besides Code 1906, chapter 125, § 58, says that whenever in any case a complete determination cannot be had without the presence of other parties, the court may cause them to be made parties by amendment. Furthermore, what harm has resulted to the plaintiff from this ruling? If error, it is harmless.

It is assigned for error that the court dissolved an injunction awarded in the case against the development of oil and gas. This assignment is answered by what is said above, that is, that there was no forfeiture or surrender. But why assign this for error when there was never any injunction consummated by bond?

. Decree affirmed.                                    *Affirmed.*