# CHARLESTON.

## SMITH v. RUSH.

### Submitted November 14, 1916.   Decided November 21, 1916.

1. APPEAL AND ERROR—*Sufficiency of Evidence—Review.*

   Where a suit is brought to recover money on a contract and the contract is denied, and the trial court decrees that the plaintiff is not entitled to recover on the contract and dismisses the bill, this court will not reverse such decree unless from all the evidence in the case it appears that the proof clearly, plainly, and decidedly preponderates against the decree. (p. 232).

2. FRAUDULENT CONVEYANCES—*Lien of Attachment—Statute.*

   Where an attachment is issued and levied on real estate as the property of the debtor, and it appears that the debtor had before the attachment was issued sold and conveyed the property levied on to another, but the deed was not admitted to record in the office of the county clerk of the county in which the property was

situated until after the attachment was levied, such attachment is a lien on the land from the time it was levied and the attaching creditor is a creditor within the meaning of section 5, chapter 74 of the Code, and the deed is void as to such debt.   (p. 230).

Appeal from Circuit Court, Monongalia County.

Bill in equity by Ira L. Smith against James L. Rush.   Decree for defendant dismissing the case, and plaintiff appeals.

*Reversed and remanded.*

*Stewart & John,* for appellant.

*E. M. Everly* and *T. H. Shannon,* for appellee.

MASON, JUDGE:

The defendant had for sale 112 acres of coal in Monongalia County, West Virginia.  In April, 1910, he wrote to plaintiff asking him if he could "handle" the coal at $145.00 per acre. Plaintiff gave the defendant a favorable answer.  The plaintiff lived at Fairmont, W. Va. and the defendant in Waynesburg, Pa.  Plaintiff offered the coal for sale to Michael Powell at the price of $150.00 per acre.  The purpose in placing the price at $150.00 per acre was to allow plaintiff $5.00 per acre profit as commission for negotiating the sale.  Powell also lived in Fairmont.  After some correspondence between plaintiff and defendant in which defendant was informed of the possible purchase by Powell, the defendant came to Fairmont, May 3, 1910, to see about consummating the deal. There was a conversation between plaintiff and defendant about the business, and the defendant talked with Powell and consummated a sale at the price of $145.00, instead of $150.00 as contemplated.  The sale was made to Michael Powell and his brother James Powell.  Up to this point there was no material difference between the testimony of the plaintiff and the defendant except that they disagreed as to what was said by them in relation to selling to Powell at $145.00 and paying plaintiff $2.50 per acre instead of $5.00.

Plaintiff says that before defendant sold to the Powells, it was agreed between them that the defendant should sell at the price of $145.00, and that plaintiff was to have by way of

commission $2.50 per acre, instead of $5.00 per acre, which he would have received had the sale been made at $150.00. The defendant denies that he agreed to pay plaintiff anything. The defendant had bought this coal from W. L. Ingram at the price of $130.00 per acre, or had an option on it at that price, but had not paid for it. Powell was to pay Ingram, and pay the balance to Rush, the defendant. This would leave Rush a profit of $1680.00. It was further agreed between Rush and the Powells that Rush would re-purchase the coal from the Powells by repaying whatever Powell had paid, with interest, upon certain conditions made in the contract.

These contracts for the sale of the coal were made May 3, 1910. Several letters passed between plaintiff and defendant after the sale, in relation to the commission claimed by the plaintiff, without any satisfactory result. Finally, about the first of May, 1915, the plaintiff brought this suit in equity against the defendant, and attached defendant's interests in certain coal and mineral rights in Monongalia County. The plaintiff alleges in his bill that the defendant made the contract with him May 3, 1910, by which he promised and agreed to pay him $280.00 for services rendered in the sale of the 112 acres of coal as above stated, and never paid any part of it. Defendant answered and denied making the contract. Defendant also denied in his answer that he owned any interest whatever in the said land when this suit was commenced, but says that on the 24th day of May, 1912, he sold and conveyed all his interest in the land to A. J. Phillips and others. This is not contradicted; but Phillips and the others did not have their deed recorded in Monongalia County, where the land is situated, until May 7, 1915, and plaintiff's attachment was issued and levied on the land on May 1, 1915. The attachment was a lien on the land from the time it was levied. The Phillips deed not having been recorded, was void as to plaintiff's debt. The plaintiff's attachment having been levied on the land, he was as to it a lien creditor, and the Phillips deed was void as to it under section 5, chapter 74 of the Code.

This brings us to the real question in dispute between the parties, and this is one of fact, namely; did the defendant

agree to pay the plaintiff the sum of $280.00, as hereinbefore
stated? The plaintiff says he did. The defendant with equal
emphasis denies that he agreed to pay the plaintiff anything.
The plaintiff seeks to recover on a special contract, and the
burden is on him to prove his case. The circuit court dis-
missed the suit. The case on the part of the defendant as to
this agreement stands on his own statement, unsupported.
The testimony of the plaintiff is supported by quite a number
of undisputed facts, among which are the following; (1)
The defendant by his letter of April 6, 1910, sought the ser-
vices of plaintiff in making a sale; (2) Michael Powell, one
of the purchasers, and who negotiated the purchase, says
that his attention was brought to the coal by the plaintiff and
that the plaintiff succeeded in interesting him in the coal;
(3) that he understood that plaintiff was acting as agent or
real estate man on commisssion or for profit; (4) Powell says:
"Q. At what price did he offer you this coal when he first
brought it to your attention and before you began dealing
directly with Mr. Rush? A. I think the price he gave me
was $150.00 per acre and I think he suggested I could talk
to Mr. Rush about it as well as himself if I cared to. Q. Did
you understand that Ira L. Smith was to receive a commission
or compensation in addition to the price of $145.00 per acre
paid by you and your brother for this coal, or that his share
of the profits above the price at which Mr. Rush had optioned
the coal, was to come out of the purchase price paid by you?
A. Well my understanding was that Mr. Rush and Mr. Smith
would divide in some way between them the $15 per acre
that we paid them above $130. Q. Who or what was the
cause of your purchasing the coal you have mentioned? A.
I don't think I ever would have purchased the coal if Mr.
Smith had not recommended it. I feel sure I wouldn't have
purchased it without his recommendation. Q. Then was your
purchase the result of his efforts as such agent or broker for
the sale of the coal? A. Largely so." Powell also says that
the clause in the contract that Rush would repurchase the
coal, was an inducement to purchase the coal. (5) Plaintiff
wrote defendant concerning his claim for commission, and de-
fendant replied June 4, 1910, only about a month after the

sale, as follows: ''Concerning the Powell deal, we have to make a new abstract and a new survey, we have settled for the coal or Powell has, but he held back our commission until things are shaped up, then we will settle with you.'' (6) Defendant agreed in his letter of June 4, 1910, to settle with plaintiff and several times ignored plaintiff's request for pay- ment without denying that he owed plaintiff, and the ques- tion was left open in this way without refusal to pay until the demand was nearly barred by limitations, and in fact so far as appears by the record defendant never denied the agreement until after this suit was brought; and (7) there is no dispute as to the fact that the plaintiff performed some service for the defendant in this behalf at defendant's re- quest, and that the defendant got the benefit of it. Plaintiff discovered the purchaser and introduced him to Rush as such, and the person thus introduced became the purchaser. It follows as reasonable that plaintiff should be paid for this.

The facts were submitted to the court and the case was de- cided in favor of the defendant. We are now asked to re- verse this decision and find for the plaintiff. ''The rule es- tablished by the repeated decisions of the appellate court, both as to law and equity is that the finding of the circuit court as to facts in issue, unless against the plain prepon- derance of the evidence, is conclusive upon the court of ap- peals. *Weaver* v. *Akin,* 48 W. Va. 456, 37 S. E. 600; *Faulk- ner* v. *Grantham,* 55 W. Va. 317, 47 S. E. 78; *Bailey* v. *Calfee,* 49 W. Va. 631, 39 S. E. 642.'' 1 Enc. Dig. Va. & W. Va. 622. We are of opinion that in this case the evidence plainly, conclusively, and decidedly preponderates against the de- cree. Upon the whole we think that the plaintiff's testimony that the defendant agreed to pay him $2.50 per acre as com- mission for services in relation to the sale, is abundantly supported, and that the evidence plainly preponderates in his favor on this point.

We are of opinion that the circuit court erred in dismissing the case, and that the decree should be reversed. We are of opinion to enter a decree in this court in favor of the plain- tiff against the defendant for $280.00, with interest thereon from the 4th day of June, 1910, and an order declaring that

the said sum is a lien on the coal and mining rights named and described in the bill and attachment, and directing that a sale of said coal and mineral rights be made by the circuit court of Monongalia County, and that this cause be remanded to the circuit court of Monongalia County, with direction to sell, in the manner provided by law, said coal and mineral rights, or so much thereof as may be necessary to pay said sum of $280.00 and interest, and the plaintiff's costs of this suit in this court and in the circuit court of Monongalia County, and the costs and expenses of sale.

*Reversed and remanded.*