# CHARLESTON.

## ISNER *v.* KELLEY.

Submitted September 9, 1901. Decided March 8, 1902.

1. DEVISE OF ESTATE—*Life Tenant's Charge.*
    F. devised to J. and H., sons of his daughter C., one hundred acres of land, describing it, "upon the following conditions, viz: The said J. and H. are to take care of and provide for all

of the reasonable wants of my daughter C. during her lifetime,
provided she resides with them." *Held*: That such care and
provision for all the reasonable wants of C. are a charge upon
the land devised, and *held further*, under the provisions of the
will it is a voluntary matter with C. whether she resides with
the one or the other of her said sons, her residing with the
one or the other is a condition precedent to his taking care of
and providing for her wants, and, until he shall refuse to so
care and provide for her, she has no cause of action against
him.   (p. 87).

2.  WILL—*Provisions Limited—Contributions*.
    There is no provision in the will for either of them to pro-
vide for her away from his home and if one is to take care of
her and keep her at his home and the other contribute to the
expense thereof it must be by contract or mutual arrangement
between them.   (p. 88).

3.  CO-OBLIGORS—*Contributions—Support*.
    As long as one is ready and willing to take and care for C.,
it being a matter of choice with her as to where she will re-
side, he cannot be compelled to contribute to her support else-
where.   (p. 90).


Appeal from Circuit Court, Barbour County.

Bill by Hardy Isner against Caroline Kelley.   Decree for de-
fendant and plaintiff appeals.

*Affirmed.*

J. HOP. WOODS, for appellant.

FRED O. BLUE and DAYTON & DAYTON, for appellees.


MCWHORTER, JUDGE:

William Fergason of Barbour County made his will, the first
clause of which is as follows: *"First*: To Jacob Isner and
Hardy Isner, sons of my daughter, Caroline Isner, one hundred
acres of land of the Southwestern portion of the farm upon
which I reside, and adjoining the lands of Aaron Phillips, the
heirs of Barnett P. Poling and others, upon the following con-
ditions, viz: The said Jacob and Hardy Isner are to take care
of and provide for all of the reasonable wants of my daughter,
Caroline Isner, during her lifetime, provided she resides with
them, and the said Jacob and Hardy Isner are required to pay to
Thomas Isner and Virginia Isner, children of Caroline Isner,
upon their obtaining their maturity, the sum of fifty dollars
each.   *Secondly*: To James Isner I give, devise and bequeath

all of the remainder of my lands, which he is to have and to hold forever free from all conditions, for he has been a kind and affectionate grandson to me."

On the 9th day of November, 1881, Hardy Isner and Columbia his wife, "for and in consideration of land claimed by the parties of the first part by will of William Fergason," conveyed by deed of special warranty to Jacob Isner, forty-four acres, at the east end of the one hundred acre tract so devised to Hardy and Jacob, described by metes and bounds, by which deed "the parties of the first part covenants to and with the party of the second part to warrant and defend the land hereby conveyed by deed of special warranty against all persons claiming under them, and the party of the first part agrees to furnish rail timber for the line fence." By deed dated March 21, 1882, Jacob Isner and his wife "for and in consideration of the sum of six hundred dollars, thirty dollars in hand paid the receipt whereof is hereby acknowledged, and one hundred and ninety against the 15th day of April, 1882, and one hundred and eighty against the first day April, 1883, and two hundred dollars against the first day of April, 1884, for which several amounts the said Lewis K. Pifer has executed his three several single bills payable as aforesaid with even date herewith," granted and conveyed with general warranty the said forty-four acres of land to Lewis K. Pifer reserving in said deed the vendor's lien for the deferred payments of the purchase money. On the 28th day of November, 1884, Jacob Isner and wife "in consideration of a tract or parcel of land given in exchange to grantors by the grantee in this deed of the value of twenty dollars, that the grantors doth give in exchange a part or parcel of their land of equal value to the grantee, with general warranty," by deed of that date conveyed five acres and sixty poles, the residue of said fifty acres, to Benjamin Annon.

At the January rules, 1900, Hardy Isner filed his bill in the circuit court of Barbour County against Caroline Kelley, Jacob Isner, Thomas Isner, Virginia Isner, Belle Pifer, Clarence Pifer, Pearl Pifer and Benjamin Annon, alleging that he had kept, cared and provided for all the reasonable wants of Caroline Kelley, formerly Caroline Isner, since the time of the death of the testator, but that his brother, Jacob Isner, had wholly neglected and refused to perform the obligation imposed upon him in respect to said land by said will although the said Caroline

Kelley was ready and willing to reside with him as the condition precedent to the said obligation; that Caroline was about seventy-one years of age and her maintenance by plaintiff had imposed upon him an expense of at least one hundred dollars a year from the year 1876, no part of which had been assumed by said Jacob Isner nor repaid by him to plaintiff, but that Jacob had sold his interest in said one hundred acres, except five or six acres, to Lewis Pifer who had since died intestate, that Belle, his widow, and his two children held and occupied the same; that he had conveyed the residue of said interest to Benjamin Annon; that there was a lien on said land and an express trust in favor of Caroline Kelley upon said land in the hands of the defendants; that Pifer and Annon took said land from the defendant, Jacob Isner, with full constructive notice of the lien and express trust imposed thereon by the will in favor of said Kelley, that same was a continuing lien and express charge thereon against which neither *laches* applies nor the statute of limitations runs; that having solely maintained and supported said Kelley under the provisions of the will without recompense or repayment as to one-half thereof by either said Kelley or Jacob Isner, plaintiff was entitled in equity to be subrogated to the lien imposed by said will to the extent of one-half the costs of said maintenance in favor of Kelley against said land sold and conveyed by Jacob Isner to Pifer and Annon in the inverse order of the alienations to them and to that extent the said Kelley had assigned her right to plaintiff by writing under her hand and seal executed by her and delivered to plaintiff which is filed with the bill, and prayed that the amount and value of one moiety of the cost of the maintenance of said Kelley by plaintiff from date of the death of the testator might be ascertained and reported by a commissioner and that it be provided for out of the moiety of said one hundred acres conveyed by Jacob Isner to Pifer and Annon together with his costs, and that provision be made for any future cost of maintenance which might be incurred on behalf of Jacob in excess of the obligation due from plaintiff under said will to be provided for and paid out of the proceeds of the sale prayed for, and for general relief.

The infant defendants, Clarence and Pearl Pifer, by their guardian *ad litem,* Gran. E. Taft, filed their answer. Defendant, Belle Pifer, also filed her answer admitting the conveyance of the forty-four acres of land to her husband, denying

that plaintiff had kept and provided for Caroline Kelley since the year of 1876, but that she had largely kept and maintained herself, and that Jacob Isner had kept and maintained her to some extent, denying that there was a lien or an express trust upon the forty-four acres but if there was such lien that the same was satisfied and discharged so far as it affects the forty-four acres if the said Caroline Kelley was kept and maintained by the defendant; that the will imposed upon plaintiff the sole duty to keep and maintain said Caroline, if necessary alone, and that it was his duty to keep and maintain her wholly and alone if said Jacob refused to keep and maintain her, if said plaintiff elected to accept the provisions of said will; and alleged that he did elect to accept the provisions of the will and entered upon and took possession of one-half of the one hundred acres the will mentioned; denying that Jacob had wholly refused and neglected to perform the obligation or that he had refused to permit Caroline to reside with him, but that he had at all times been ready and willing to keep and provide for her the best he could, that Caroline may have preferred to make her home with plaintiff and Jacob could not compel or require her to reside with him, and that by the terms of the will she had the right to make her home and reside with either without charge to the other; that plaintiff lived within a short distance of respondent's home and had notice and knowledge that Jacob executed the deed to her husband at the time of its execution, that it appears by said deed that said Pifer executed his notes for deferred payments of the purchase money which facts were well known to plaintiff, that he permitted the said Pifer to pay said notes and raised no objections of any kind whatever to the conveyance made by Jacob and knowingly permitted said Pifer to pay said purchase money in full and at no time asserted any right of any kind against said forty-four acres of land, that Pifer took possession of said land not later than the 1st of March, 1883, and remained in open, continuous, adverse possession thereof during his lifetime, and that since his death respondent and heirs at law of said Pifer have been so in possession, that Pifer had made large improvements on said land to the value of five hundred dollars, all of which when being done was known to plaintiff who stood by and saw the land improved and large sums of money and amounts of labor expended and yet asserted no right or claim of any kind to said land, and that he is now estopped

from asserting any right or claim; denied that it cost one hundred dollars a year at least to support Caroline Kelley since the death of Fergason, and denied that said Caroline Kelley had any claim either in law or equity on the said forty-four acres of land to assign, transfer or set over to the plaintiff as she had sought to make it appear that she had done by assignment dated December 29, 1899; that after the long lapse of years and the acquiescence by the plaintiff in the conveyance of his brother Jacob to Pifer and the *laches* and conduct of plaintiff were equivalent to the statute of limitations and that any rights he may originally have had were barred, that the claims of plaintiff were stale demands, which a court of equity abhors.

Depositions were taken and filed on behalf of the plaintiff and of the defendants and the cause was finally heard the 23rd of February, 1901, when the court dismissed the bill. The plaintiff appealed to this Court and says the court erred in not granting to plaintiff the relief prayed for in his bill or to refer the cause to a commissioner for the purpose of ascertaining the amount of relief to which he was entitled, that it was error if not to grant the whole relief prayed for in the bill at least under the same and prayer for general relief to give such relief as in equity he was entitled to have and that it was error for the court to dismiss the cause with costs. It is insisted by counsel for appellant that because the court overruled the demurrer to the bill it raised and settled affirmatively the legal question of the right of plaintiff to maintain this suit, hence, the first assignment of error should be sustained. The language of the will giving to Jacob and Hardy Isner, the grandsons of the testator, the land in question upon the condition stating the same distinctly, that they were to take care of and provide for all the reasonable wants of his daughter, Caroline Isner, during her lifetime made such support a charge upon the land, which could be enforced as against the land of the party refusing support whenever she was refused such care and maintenance by them or either of them when she should choose to reside with them. In *Rivers* v. *Rivers*, 36 S. C. 302, a devise to A. "All the residue of my estate, both real and personal, and to his care the protection of my daughter, C., during her natural life," was held to create a charge upon the realty which could be enforced in equity even in the hands of a *bona fide* holder. In *Outland* v. *Outland*, 118 N. C. 138, a gift to E. and C. with a provision, "In

consideration of the property I have given to E. and C. they are to have the care of and support J., and it is my will that he shall have his choice which of them he will live with and the other pay half of the expenses," was held to create a charge upon the land devised to E. and C. *Laxton* v. *Tilley,* 66 N. C. 327; *Carter* v. *Warrell,* 96 N. C. 358; *Thayer* v. *Finnegan,* 134 Mass. 62; *Meisenheimer* v. *Sifford,* 94 N. C. 592. A devise to A. provided he would support B. was held to create a charge upon the land devised. Page on Wills, sec. 751. In case she chose to reside or live with them, they were equally bound to so provide for her. The bill alleges that the defendant, Jacob Isner, refused to comply with the conditions of said will imposed upon him and was therefore, liable for a just proportion of such maintenance and care. The deed from Hardy to Jacob for the forty-four acres of land was not filed as an exhibit with the bill but was brought out on cross examination of plaintiff in evidence. While the bill might be good on demurrer, yet, upon the evidence and the whole case plaintiff might not be entitled to any relief. It is shown in evidence that on the 9th day of November, 1881, Hardy Isner and wife conveyed to Jacob Isner, with special warranty, forty-four acres of said land. Soon afterwards as shown by the bill, in March, 1882, said Jacob and his wife conveyed the forty-four acres to Lewis K. Pifer in consideration of six hundred dollars only receiving thirty dollars of the purchase money and taking the three several notes of one hundred and ninety dollars, one hundred and eighty dollars, and two hundred dollars respectively payable on the 15th day of April, 1882, and the first days of April, 1883 and 1884. The plaintiff raised no objection to this sale and seems to have made no claim until about the time of the bringing of this suit, some seventeen or eighteen years afterwards and permitted the purchaser, Pifer, not only to go on and pay up the purchase money without objections or making claim thereto, but the purchaser went on making improvements on said property. Whatever may be the rights of Caroline Kelley against the land devised to Jacob in case it should be shown that he neglected and refused to perform the conditions of the will imposed upon him in case Caroline offered to reside with him, it would seem that plaintiff by his own conduct and acts is estopped from recovering any contribution for what he has done, from the land in question in the hands of a third party. Section 2, chapter 72, Code, pro-

vides that "Every such deed, conveying lands, shall, unless an exception be made therein, be construed to include all the estate, right, title, and interest whatever, both at law and in equity, of the grantor, in or to such lands." If it was the purpose of plaintiff to hold said land bound in his favor for a part of the maintenance of their mother, which should be borne by his brother Jacob under the will, it was his duty to have so expressed it in the deed made by him to Jacob. And section 8, chapter 71, Code, provides, "Where any real estate is conveyed, devised, or granted to any person without any words of limitation, such devise, conveyance, or grant shall be construed to pass the fee simple or the whole estate or interest which the testator or grantor had power to dispose of in such real estate, unless a contrary intention shall appear by the will, conveyance, or grant." *Turk* v. *Skiles,* 45 W. Va. 82. The deed of November 9, 1881, from plaintiff to Jacob Isner warrants against all persons claiming under the grantor. In *Allen* v. *Yeater,* 17 W. Va. 128, it is held: "A covenant in a deed must be construed most strongly against the grantor." Appellant contended that the deed from plaintiff to his brother Jacob purports to be simply a deed of partition which they had a right to make under the will and showed upon its face that it was made for that purpose, and is a conveyance with covenant of special warranty only and can have no effect, and was intended to have no effect except to vest in the grantee by paper title his undivided moiety by metes and bounds. The statute is very explicit on the effect of special warranty. Section 14, chapter 72, Code: "A covenant by any such grantor 'that he will warrant specially the property hereby conveyed,' shall have the same effect as if the grantor had covenanted that he, his heirs and personal representatives, will forever warrant and defend the said property unto the grantee, his heirs, personal representatives and assigns, against the claims and demands of the grantor and all persons claiming or to claim by, through, or under him." But his deed without any express reservation or anything to show an intention to charge any claim against the land estopped plaintiff from asserting any claim against the land. As said in *Turk* v. *Skiles,* cited, "He had an interest not technically in the land, but an incumbrance or debt to come out of it, and granting the land, did he not grant that lien? An estoppel arises out of the contract, treated simply as such. Biglow; Estop. 422." In his bill plaintiff al-

leges that Jacob neglected and refused to perform the obligation imposed upon him by said will although the said Caroline was ready and willing to reside with him. It is not proved that she was ready and willing to reside with him, and plaintiff states that she did not live with him because she said she could not stand the treatment. It was denied in Mrs. Pifer's answer that Caroline was always willing to reside with Jacob and that she desired to live with him. . Jacob Isner testified that he had always been ready and willing to maintain and provide for his mother the best he could if she would reside with him and was still willing to do the best he could for her and was always so ready and willing, but he could not say that she was willing to reside with him at all times. This is not denied in the testimony, nor could it be except by Mrs. Kelley herself. The plaintiff claims, at least in part, as her assignee of her right to subject the land to her claim. He should have shown by her testimony, if he could, that the testimony of defendant, Jacob Isner, was not true. This he did not do. The best witness to all of this matter was Caroline Kelley herself and why her deposition is not taken is not explained. It is asserted by counsel for appellees that notice was given by plaintiff to take her deposition but the same was not taken, and her testimony not being taken the legal presumption is that it would have been unfavorable to the plaintiff. *Dent* v. *Pickens,* 46 W. Va. 378; *Robinson* v. *Woodford,* 37 W. Va. 377; *Hefflebower* v. *Deitrick,* 27 W. Va. 16; *Wells-Stone* v. *Truax,* 44 W. Va. 531; *Union Trust Co.* v. *McClellan,* 40 W. Va. 405.

Had Caroline Kelley any cause of complaint? Has she not had all these years from both of her said sons, but concededly principally from the plaintiff, the maintenance and care provided for her in the will? And has she cause of action against either while the other is properly caring for her? If her two sons were living together and both refused to allow her to live with them or to comply with the conditions of the will, there would be no question about her right to proceed against the land for her support. Under the provisions of the will it is a voluntary matter with Mrs. Kelley whether she lives with the one or the other of her sons, and her going to reside with one or the other is a condition precedent to his taking care of and providing for her reasonable wants under the will, and until he shall refuse to so care and provide for her she has no cause of action

against him. There is no provision in the will for either of them to provide for her away from his home and if one is to take care of her and keep her at his home and the other contribute to the expenses thereof, it must be a matter of cantract between them. As long as he is ready and willing to take and care for his mother, it being a matter of choice with her as to where she will stay, he cannot be made to contribute to her support elsewhere. I see no error in the decree and it will be affirmed.

*Affirmed.*