# CHARLESTON.

## ERWIN v. HEDRICK.

Submitted January 21, 1903. Decided March 28, 1903.

1. DEED—*Undue Influence.*

 To set aside a deed for undue influence, it must be shown to the satisfaction of the court that the grantor, at the time of the execution of the deed, had no free will, but stood *in vinculis;* or it must appear that the undue influence was such as to destroy free agency, and substitute the will of another for that of the person nominally acting. *Delaplain* v. *Grubb*, 44 W. Va. 612. *Held:*. In this case there is no such proof. (p. 543).

Appeal and *supersedeas* from the Circuit Court, Greenbrier County.

Action by Rebecca R. Erwin against W. A. Hedrick. Judgment for defendant, and plaintiff appeals.

*Reversed and Remanded.*

J. W. ARBUCKLE, for plaintiff.

PRESTON & WALLACE, and SIMMS, ENSLOW & ALDERSON, for defendants.

MILLER, JUDGE:

In the above entitled cause, the circuit court of Greenbrier County entered two decrees, one on the 8th day of December,

1900, and the other on the 6th day of May, 1901. From said decrees, the plaintiff was allowed an appeal to this Court. The general object of the suit is to have cancelled and set aside, a deed executed by the plaintiff, Rebecca R. Hedrick, now Erwin, to the defendant, William A. Hedrick, bearing date on the 15th day of August, 1894; and also an agreement of said Hedrick with said Erwin, bearing the same date, the deed and agreement, as claimed by appellant, constituting but one contract.

The bill alleges that the plaintiff was an unmarried woman, inexperienced in business, and was induced, by misrepresentations and undue influence of defendant, to execute said deed, which, at the time, she did not understand; and to accept the said agreement; that the contract is unjust and inequitable; that the consideration for the contract is inadequate and voluntary; and that the plaintiff intended to make a will, or a paper having the force and effect of a will, instead of the said deed, and prays that the deed and agreement may be cancelled and set aside. The defendant answered, denying all of the material allegations of the bill; and upon general replication being filed, a mass of testimony was taken and put into the record. Upon final hearing, the circuit court, by its first mentioned decree, refused to cancel said deed and agreement, but did decree the specific performance by said Hedrick of said agreement with a certain interlineation therein, hereinafter referred to; and in its said second decree, adjudged that the defendant was and is entitled to the possession of the old mansion house and its appurtenances on the farm in controversy.

The material facts in the record may be summarized as follows: The maiden name of the plaintiff was Hedrick. Her father, Abram Hedrick, who died on the second day of March, 1894, by deed in which his wife, Sarah Hedrick, did not join, several years before his death conveyed to the plaintiff, then about thirty-three years of age and unmarried, a tract of land, situate in Greenbrier County, containing one hundred and ninety-five and three-fourths acres, with considerable personal property; that plaintiff, soon after her father's death, took possession of the land and other property; that said Sarah Hedrick had dower in the land, and lived thereon with plaintiff, until her death in April, 1896; that D. C. Hedrick, a brother of plaintiff, was a tenant of plaintiff on said land; and Fred

Hedrick, another brother, was next her tenant until 1891, but afterwards he left the land, and in 1899 went west. In 1893, the defendant, W. A. Hedrick, a cousin of plaintiff, then about twenty-four years old, leased the farm from plaintiff until 1895. Previous to that time, defendant had attended a business college at Staunton, Virginia, and had graduated therefrom, and, afterwards, and before renting the land, had done some work for Fred Hedrick on the land, and on a saw mill. By the terms of the lease, plaintiff was to furnish everything; board defendant and his hands; and was to receive as rent one-half of the crops raised; and was also to give defendant one-half of the increase of the live stock. During this tenancy defendant had some business positions offered to him, which he had been considering, and had taken some steps toward the acceptance of one of them, at the expiration of his lease; but plaintiff, to induce defendant to stay on the land, offered to give him the farm in consideration that he would pay certain sums of money for her and remain. Plaintiff also wrote a will, purporting to give the farm to defendant and handed it to defendant for examination and consideration. Afterwards, on the 15th day of August, 1894, defendant went to Lewisburg and consulted John A. Preston, Esq., an attorney at law, concerning this matter, and was advised by Preston that, inasmuch as he proposed to build upon the land and otherwise improve the same, if the offer of plaintiff should be accepted by him, it would be better for him to have a deed and an agreement containing the contract of the parties. Thereupon the said deed and agreement were prepared by Preston, as appeared to him proper in such case, and as they now appear in the record, except the signatures of the parties thereto and of the officer who certified the acknowledgment thereof, and the interlineation in the agreement hereinafter discussed. The said deed, agreement and will were then taken back by defendant, and delivered to the plaintiff, who read the deed and agreement as prepared, and stated that she liked their form better than the paper which she had written. Plaintiff kept the deed and agreement in her possession until the 26th day of October, following. On that day, the defendant went with the plaintiff, at her instance, to Levi Claypool, a notary public, she having previously arranged the time, and then and there, she signed

and acknowledged the said deed as prepared, and delivered it to defendant in the presence of the two witnesses, who attested the same by subscribing their names to the "Memo." annexed thereto, at her request. The agreement was, at the same time, signed and acknowledged by the defendant and delivered to the plaintiff. Whether the agreement was interlined before its execution or after it was executed and delivered to the plaintiff, is a controverted question in this suit. It further appears that plaintiff stated at the time of the execution of the deed that she had not been persuaded or influenced to do the act; but that she had acted of her own free will and accord; at other times, that she knew what she had done; that she was satisfied therewith; that she did not intend that any of her property should go to her relatives; and that she meant that her property should remain just as the deed provided; and, on other occasions, she declared that she understood the effect of a recorded deed but not of an unrecorded deed. It seems that this deed was not to be recorded until after the death of plaintiff's mother. Plaintiff says it was not to be recorded until after her death. For the reason that the deed was not to be recorded until some future time, Preston advised defendant that witnesses to the execution and delivery of the deed might save the parties trouble about the matter thereafter. In not wanting the deed put to record by defendant, the plaintiff seemed to be influenced by a desire to avoid annoyance and criticism from her mother and other relatives, who had busied themselves about the transaction, and were dissatisfied therewith. Defendant, after obtaining the deed, which was not recorded until June 21, 1899, worked upon and improved the land as his own without objection from plaintiff; and was assisted by her to some extent in the erection and completion of some buildings thereon, which cost eight or nine hundred dollars. In the meantime the defendant was married and with his wife continued to live on the farm.

On the 30th day of August, 1899, plaintiff was married to Robert F. Erwin; and afterwards, in 1900, with her husband, went to the State of Missouri to reside. Shortly before her marriage, and doubtless in contemplation of the same, she commenced this suit. The deed and agreement, with the interlineation therein are, in substance and effect, as follows: "This deed

made and entered into this 15th day of August, 1894, between Rebecca R. Hedrick of the first part and William A. Hedrick of the second part, both of Greenbrier County, West Virginia, witnesseth; that the said party of the first part for and in consideration of said party of the second part providing said party of the first part with a good and comfortable support and home on the tract of land hereinafter mentioned and described and in the house where said party of the first part now resides with all the attention necessary to make the said party of the first part comfortable, for and during the life time of the said party of the first part, and in further consideration of the said party of the second part paying to William N. Hedrick, the sum of five hundred dollars, to Mary A. Fry, wife of Jacob Fry, the sum of three hundred and eighty dollars, and to Daniel C. Hedrick one hundred and seventy-five dollars, said sum to be paid as aforesaid to be paid as soon after the death of said party of the first part as said party of the second part can make them conveniently, said sums so to be paid as aforesaid not to draw interest until the death of said party of the first part, has given, granted, bargained and sold and by these presents does sell and convey, with general warranty of title unto the said party of the second part, his heirs and assigns forever, that certain tract or parcel of land situate, lying and being in Fort Spring District, Greenbrier County, West Virginia, on Greenbrier river, joining the lands of John Lewis, Harvey Coffman and Price Coggman, being the same tract of land deeded to said party of the first part by her father, Abram Hedrick, now deceased, and being the same tract of land upon which she now resides, containing one hundred and ninety-five and three-quarter acres more or less. To have and to hold the land hereby conveyed unto said party of the second part, his heirs and assigns forever. It is expressly understood that a lien is hereby retained on the land hereby conveyed for the support and maintenance aforesaid of the said party of the first part during her life, and also for the payment after the death of said party of the first of the aforesaid mentioned sums of money, to-wit: The sum of five hundred dollars to said William N. Hedrick, three hundred and eighty dollars to said Mary A. Fry, and one hundred and seventy-five dollars to Daniel C. Hedrick; and also in

consideration of the undertakings above mentioned by the said party of the second part the said party of the first part does hereby sell and convey to said party of the second part all of her personal property consisting of horses, cattle, sheep, hogs, farming implements, household furniture, kitchen furniture, etc. In witness whereof the said party of the first part has hereunto set her hand and seal this the day first above written. Rebecca R. Hedrick, (Seal)." This deed is duly acknowledged by said Hedrick, before Levi Claypool, notary public, on the 26th day of October, 1894, and has subjoined thereto the following: "Memo: Rebecca R. Hedrick, this 26th day of October, 1894, delivered this deed to William A. Hedrick in our presence as witness our hands. Levi Claypool, C. C. Claypool."

And it appears to have been recorded on the 21st day of June, 1899. "This agreement made and entered into on this 15th day of August, 1894, between William A. Hedrick of the first part and Rebecca R. Hedrick of the second part witnesseth that the said party of the first part in consideration of the conveyance to him of the farm of one hundred and ninety-five and three-quarter acres and all her personal property by said party of the second part by deed dated this day, does hereby undertake and agree to support in a good and comfortable manner and furnish a home in the house upon said tract of land of the said party of the second part during her life with all the attention necessary to make said party of the second part comfortable and further to pay as soon as he conveniently can after the death of the said party of the second part to William N. Hedrick the sum of five hundred dollars, to Mary A. Fry, wife of Jacob Fry, the sum of three hundred and eighty dollars and to Daniel C. Hedrick the sum of one hundred and seventy-five dollars, all of which is set out in said deed of said party of second part to said party of the first part hereto. Said farm and personal property having been turned over to me together with the aforesaid deed (it being understood that the said R. R. Hedrick is to have control of same during her life and is to receive one-half of the income for the support mentioned in deed and to pay taxes and other farm expenses) upon the execution and delivery hereof as witness my hand and seal. W. A. Hedrick, (Seal)."

This agreement is also duly acknowledged before said Claypool, notary public, on the 26th day of October, 1894.

There is much more of the depositions, relating to various matters not pertinent to the real points in controversy. From the whole record, I conclude that both plaintiff and defendant were capable of knowing and did know what they were doing when they executed the deed and agreement; that the grantor had the legal capacity at the time to make the deed; that the facts and circumstances of the case, as presented, do not prove that plaintiff was induced to execute and deliver the deed, by reason of misrepresentations, undue influence or fraud of the defendant; and that the principal motive which actuated the plaintiff to execute and deliver the deed was to secure her support and maintenance, and to provide for the payment of her debts and the several sums required by her to be paid by the defendant as specified in the deed; as it does not appear that she had any prospect of marriage at that time.

The value of the farm, at the date of the deed, was about two thousand and four hundred dollars. By accepting the deed, the defendant became liable for something over fourteen hundred dollars made up of the indebtedness of the plaintiff and of the sum required by her to be paid by the defendant as aforesaid. This sum includes three hundred dollars which she afterwards became surety for the plaintiff. The land was then encumbered by the dower of said Sarah Hedrick therein, besides "the good and comfortable support and home" for the plaintiff in the house on the land, during her life, to be furnished by defendant, and for which a lien was reserved on the land in the face of the deed. The facts do not justify the contention of the plaintiff that the consideration for the contract was and is inadequate and voluntary. There is nothing in the record to sustain the allegation that the plaintiff, at the time she executed and delivered the deed, intended to make a will, or that she believed the paper so executed and delivered by her to be a will.

In *Delaplain et al* v. *Grubb et al*, 44 W. Va. 623, the Court says: "If all that is suggested against List's acts were fully true, it would not amount to undue influence in the eye of the law; for it must be of such a nature as to overcome the free agency. *Forney* v. *Ferrell*, 4 W. Va. 729. Both as to deeds and wills

the underlying idea is that the influence must be such as to destroy free agency and substitute the will of another for the person nominally acting. 27 Am. & Eng. Enc. Law, 453. The highest court in the land has put the principle so strongly as to say that to set aside a deed or will for undue influence it must be shown that the party had no free will, but stood *in vinculis*. It must amount to force or coercion, destroying free agency. *Conley* v. *Nailor,* 118 U. S. 127, 135 (6 Supt. Ct. 1001)." It seems useless to say that the case before us does not approximate the rule thus established.

As to the second charge in the bill, 2 Pomeroy, sec. 926, says: "The rule is well settled that where the parties were both in a situation to form an independent judgment concerning the transaction, and acted knowingly and intentionally, mere inadequacy in the price or the subject matter, unaccompanied by other inequitable incidents is never of itself a sufficient ground for canceling an executed or executory contract. If the parties, being in the situation and having the ability to do so, have exercised their own independent judgment as to the value of the subject matter, courts of equity should not and will not interfere with such valuation." Again, in the same section: "The doctrine, however, is now settled that *mere* inadequacy, that is, inequality in value between the subject matter and the price, is not a ground for refusing the remedy of specific performance; in order to be a defense, the inadequacy must either be accompanied by other inequitable incidents, or must be so gross as to show fraud. In short, inadequacy as a negative defense, and as an affirmative ground for cancellation, is governed by one and the same rule." Considering the respective ages and environments of the parties, they were fully capable of understanding, and did understand, the value of the land and the consideration to be paid therefor. The contract, so far as the record discloses, was unaccompanied by any inequitable incident, caused by defendant. The case presented does not come within the rule here stated. But in addition to this, the consideration to be paid for the land appears to have been its full value. It is useless to discuss the third proposition in the bill. Suffice it to say, that the deed was executed and acknowledged by the plaintiff who was, at the time fully capable of making such in-

strument; that it was delivered by the plaintiff to the defendant uninfluenced by misrepresentation, undue influence or fraud on the part of the defendant, and was and is valid for the purpose therein stated.

It is conceded that the original draft of the agreement as prepared by Preston did not contain the words: "It being understood that the said R. R. Hedrick is to have control of same (meaning the farm) during her life time, and is to receive one-half of the income for the support mentioned in the deed, to pay taxes and other farm expenses." There is conflict in the evidence as to when, and by whom this interlineation was made. Plaintiff testifies that defendant told her that he had made the interlineation, and that she recognized it as his hand writing. The defendant, however, avers in his answer and also testifies that he did not write the interlineation; proves by a number of witnesses that it is not in his hand writing; swears that it was put into the agreement after he had signed, acknowledged and delivered the same to plaintiff; that he had never seen the interlineation until after this suit was instituted; that the agreement had been in the plaintiff's possession from the time of its delivery to her; and that some of her relatives had had access thereto.

Bearing in mind that plaintiff, after the execution of said deed and agreement, had changed her plans for the future; that she contemplated marirage and did marry, and removed to Missouri to reside; that she is presumed to have known that under the deed she could not require the defendant to provide her with "the good and comfortable support and home on the tract of land and in the house where she then resided," if she should leave the same and live in Missouri, it cannot be fairly inferred, that the interlineation in said contract was conceived and interpolated therein by the defendant, in order that the plaintiff might, notwithstanding the terms of the deed, still have control of the land, during her life, and receive one-half of the income thereof for the support mentioned in the deed. *Isner* v. *Kelly,* 51 W. Va. 82. It is not probable that defendant made the interlineation in question.

The conclusion is that the interlineation in the agreement was not a part of the contract at the time of the execution, acknowledgment or delivery thereof by defendant to plaintiff; that the

interlineation was made in the agreement without the knowledge or consent of the defendant, and without his acquiesence therein; and that, therefore, the circuit court erred in holding "that the minds of the plaintiff and defendant met as to the terms mentioned in the interlineation in said contract; and that the plaintiff was to have control of said land during her life time and to receive one-half of the income of said tract of land conveyed by said deed for the support mentioned in said deed and to pay taxes and other farm expenses; and that said W. A. Hedrick is sole tenant of said tract of land during plaintiff's life."

The said decree, made and entered on the 8th day of December, 1900, must therefore be modified in so far as it determines and adjudges said interlineation to be a part of said contract, and said interlineation in said contract is expunged and held for naught; the part of said decree adjudicating that said W. A Hedrick is sole tenant of said tract of land during the plaintiff's life must also be stricken out and disregarded; and said contract is restored to its original language and terms, independent of, and without regard to, said interlineation or any part thereof; and the right of the appellant to the occupancy of the house in which she resided on the said farm at the date of the execution and delivery of said deed not being sufficiently reserved in, the said decree made on the 6th day of May, 1901, the said last mentioned decree must also be modified, so as to reserve to said Rebecca R. Erwin, *nee* Hedrick, the right to the occupancy of said house, if she elects to occupy the same. The said two decrees are, therefore, reversed with costs to the appellee; and the cause is remanded to the circuit court, to be therein further proceeded with, according to the principles herein announced, and according to the rules governing courts of equity.

*Reversed and Remanded.*