## CHARLESTON

RITZ *r.* RITZ.

Submitted September 10, 1907.    Decided March.17, 1908.

1. ADVERSE POSSESSION—*Color of Title.*
   It is well settled in this state that a deed which purports to convey title, however defective, gives color of title, and when accompanied by adverse possession thereunder for the statutory period of ten years will ripen into a good title.   (p. 112.)

2. DEEDS—*Validity—Undue Influence—Evidence—Admissibility.*
   To avoid a deed as having been procured by undue influence, such undue influence must be directly connected with the execution of the deed; and the declarations of the grantor, made either before or after the execution of the deed, are not admissible for the purpose of impeaching the same.   (p. 115.)

3. SAME—*Sufficiency of Evidence.*
   To set aside a deed for undue influence, it must be shown that the grantor at the time of its execution stood *in vinculis* or that the undue influence was such as to destroy free agency and substitute the will of another for that of the grantor.   (p. 116.)

Appeal from Circuit Court, Ohio County.

Bill by Mary E. Ritz and others against William Ritz and others. Decree for plaintiffs, and John W. Adams, committee for Annie M. Ritz, appeals.

*Reversed.    Remanded.*

Henry M. Russell, S. W. Douglas and Clyde F. Amos, for appellant.

Riley & Ritz and Caldwell & Caldwell, for appellees.

McWhorter, Judge:

John Ritz died in September, 1869, seized and possessed of two adjoining parcels of real estate on the west side of Market Street south of 14th Street in the City of Wheeling. He left surviving him his widow, Caroline Ritz, and eight children, viz: Catherine Meyer, Elizabeth Rhul, A. Mollie Nichols, Caroline Bradley, John Ritz, James M. Ritz, William Ritz and Annie M. Ritz. The widow and Annie M. Ritz remained in possession of the property. By deed dated March 2, 1872, Caroline Bradley, in consideration of $600, conveyed to her mother, Caroline Ritz, all her interest in said property. On the 22nd day of July, 1876, by deed of that date, A. Mollie Nichols, in consideration of a like sum of $600, conveyed all her interest in said property to her mother, Caroline Ritz. These women, at the date of the respective deeds made by them, were married and living separate and apart from their respective husbands. By deed dated June 18, 1875, Geo. O. Davenport, special commissioner of the circuit court of Ohio county, conveyed to Caroline Ritz, in consideration of $150, the interest of William Ritz in said property. By deed dated April 19, 1879, W. J. W. Cowden, trustee, in consideration of $350, conveyed to said Caroline Ritz all the interest in said property of James Ritz. Elizabeth Rhul and her husband both died previous to the 25th day of August, 1880. On the said 25th day of August, 1880, John C. Rhul and his wife and Joseph Rhul, the only two children of said Elizabeth Rhul, deceased, conveyed all their interest in said property to Caroline Ritz. By deed dated February 29, 1896, Caroline Ritz conveyed with general warranty reserving a life estate therein, the said entire property to Annie M. Ritz in consideration of $5 and love and affection. Caroline Ritz died January 28, 1903, leaving a will naming as her executor J. B. Wilson, devising to her children John, William, James, Annie M. and Kate Meyer all of her shares of property, real, personal and mixed, of whatever nature and kind soever and whatsoever to be divided among them share and share alike, and authorizing her executor to

sell and dispose of sufficient of her property, real, personal or mixed, to the best advantage for the interests of her devisees as soon as practicable after her death, and pay all just debts that might be against her at the time of her death, and funeral expenses, and divide the residue as stated. The Meyers' interest was conveyed to W. P. Robinson in January and February, 1902. John A. Ritz and Mary E. Ritz, his wife, conveyed the interest of said John A. Ritz by deed of October 15, 1877, to Samuel Kuglen in consideration of $800; and by deed of April 2, 1883, said Kuglen and wife conveyed the same back to Mary E. Ritz, wife of John A. Ritz.

At April rules, 1903, Mary E. Ritz, John A. Ritz, Hubert Ritz, Walter Ritz, Austin Ritz, Bertha Ritz and Gertrude Garee and Isaac Garee, her husband, filed their bill in the circuit court of Ohio county against William Ritz and Anna Ritz, his wife, James M. Ritz and Catherine Ritz, his wife, Annie Ritz, William Meyer, Frank Meyer, John Rhul and Ella C. Rhul, his wife, Joseph Rhul, William P. Robinson, Lee Ritz, Anna Camp and John B. Wilson, executor of Caroline Ritz, deceased, alleging the facts above set forth and that the deeds made by Caroline Bradley and A. Mollie Nichols were void and conveyed no title to Caroline Ritz of their interests because of the informalities of the execution of the deeds; and alleging that the deed made by Caroline Ritz of February 29, 1896, conveying the property to the said Annie M. Ritz was procured by the said Annie M. Ritz, through and by means of violence and intimidations and threats of violence and intimidation by the said Anna M. Ritz towards the said Caroline Ritz to induce her to make the said deed; and praying that the said deed of February 29, 1896, be declared to be null and void and of no force and effect, and that the cloud created thereby be removed from said title to said property, that the interest of the parties to the suit in and to the said property might be fixed and ascertained by decree, that said property be sold and the proceeds of the sale divided among those entitled thereto in proportion to their interests and that a receiver be appointed to have the care and management of the said property and to rent the same to suitable tenants until such sale could take place, and for general relief. Copies of all the deeds mentioned in the bill were filed as exhibits.

The defendant Annie M. Ritz answered denying the allegations of the bill charging her with violence and intimidations, &c., of her mother to procure the said deed, admitting that the property could not be partitioned in kind and consenting to a sale thereof and division of the proceeds. Other answers were filed all admitting that the property was not susceptible of partition in kind and asking that the same be sold and the proceeds divided according to the rights of the parties entitled thereto, and joining in the prayer of the bill to set aside the deed of February 29, 1896, to Annie Ritz. The defendant Annie M. Ritz, after the institution of this suit and the filing of her answer, was adjudged to be insane and John W. Adams was duly appointed her committee and upon his petition was made a party defendant thereto and the cause revived in his name.

The court appointed W. W. Irwin, the sheriff of Ohio county, as special receiver of the property. The property was sold under decree to Ella D. Robinson at the price of $33,000.00, which sale was confirmed, none of the parties objecting nor excepting thereto. On the 24th of December, 1904, the cause was referred to one of the commissioners in chancery of the court to settle the accounts of the special receiver, showing his receipts and disbursements, and what amount of money was still in his hands to the credit of this suit; second, what amount of money should be paid by Annie Ritz for the use and occupation of that part of said property which she had been using and occupying; third, the respective interests of the parties to this suit, or any of them, in the proceeds of the sale and the amount which should be decreed out of the proceeds to the parties, or any of them, respectively; fourth, the amount of money, if any, which should be charged against Annie Ritz, or any other party thereto, for money paid her or them by said special receiver under any former order or decree in this suit; and for such other matters as might be required by any of the parties in interest. The commissioner filed his report together with the depositions taken in the cause and reported that the deed of February 29, 1896, from Caroline Ritz to her daughter Annie M. Ritz should be declared null and void, and that the proceeds of the purchase money of the five-eighths of said property should be distributed under the will of Caroline Ritz to John

A. Ritz, Annie M. Ritz, William Ritz, James M. Ritz and to the estate of Kate Meyer, deceased, each the one-fifth of the said five-eigths or the one-eigth of the whole; that the remaining three-eighths should be distributed to Annie M. Ritz, John A. Ritz and Ella Robinson, each the one-third, or one-eighth of the whole, except that the last above mentioned one-eighth inherited by John A. Ritz, should be held by him for his benefit during his natural life and at his death be distributed among the children of himself and his deceased wife. And reported in the alternative, that if the deed from Caroline Ritz to Annie M. Ritz of February 29, 1896, was valid, then Annie M. Ritz was entitled to the five-eighths of the said real estate granted by said deed, plus the one-eighth inherited from her father John Ritz, deceased, making six-eighths in all; and to the children of John A. Ritz and Mary E. Ritz, now deceased, the one-eighth of said real estate, or its proceeds, subject to the curtesy of John A. Ritz; and to Ella D. Robinson, grantee of W. P. Robinson who was the grantee of William, Frank and Henry Meyer, the remaining one-eighth. Then as a second alternative, he reported how the parties to the suit would take in case the deed from Caroline Ritz to Annie M. Ritz was valid and the deeds from Caroline Bradley and A. Mollie Nichols should be held void.

The said Annie M. Ritz and John W. Adams, committee, excepted to the finding of the report in holding the deed from Caroline Ritz of February 29, 1896, void and for the manner in which he recommended the distribution of the fund.

The cause came on to be heard on the 9th day of December, 1906, when the court overruled the exceptions taken by said Annie M. Ritz and John W. Adams, her committee, and held that the deed from Caroline Ritz to Annie M. Ritz of February 29, 1896, as well as the deeds of Caroline Bradley of March 2, 1872, and of A. Mollie Nichols of July 22, 1876, were null and void and so decreed and proceeded to settle the distribution accordingly.

The defendant John W. Adams, committee, appealed from said decree and contends that the court erred in setting aside the three deeds and holding them null and void.

Appellees, by counsel, truly say there are but three questions involved to be here determined, i. e., as to the validity of the three deeds. The deed from Caroline Bradley to her

mother, Caroline Ritz, of March 2, 1872, and the deed from
A. Mollie Nichols to Caroline Ritz of July 22, 1876, involve
questions of law; while the validity of the deed from Caroline
Ritz to Anna M. Ritz of February 29, 1896, depends upon
questions of fact. If these deeds are all held valid and
sufficient, then the manner of distribution of the proceeds of
the sale of the property adopted by the circuit court, insofar
as it relates to the five-eighths thereof claimed by the defend-
ant Annie M. Ritz to have been conveyed to her by her
mother by the last named deed, is error. Caroline Ritz and
Annie M. Ritz were in possession of the property. It seemed
to be the desire of the most of the heirs of John Ritz, deceased,
the children of Caroline Ritz, the widow and their mother,
that she should remain in possession and occupancy and enjoy
the use of the property for a home and her support as long .
as she lived. Several of them conveyed their interests to her
for and during her life. The daughters Caroline Bradley and
A. Mollie Nichols, both married and living separate and
apart from their husbands, each for the acknowledged con-
sideration of $600 attempted to convey their respective inter-
ests in said property to their mother in fee. It is true the
acknowledgment in each case was defective, and at the proper
time and within the limitation of the statute these deeds
might have been held void; but it has been frequently decided
by this Court that a deed absolutely void with possession
under it would ripen into a good title. In *Randolph* v. *Casey*,
43 W. Va. 289, it is held: "Possession under a void deed is
sufficient to give color of title as against the grantors, and to
set in motion the statute of limitations, and the coverture of
the appellant, who was the grantor, does not effect the ques-
tion." And in *Swann* v. *Thayer*, 36 W. Va. 46, (Syllabus
Pt. 1), it is held: "Color of title, for the purpose of adverse
possession under the statute of limitations as to land, is that
which has the semblance or appearance of title, legal or
equitable, but which is in fact no title. Any written instru-
ment, however defective or imperfect, no matter from what
cause invalid, purporting to pass or convey title to land, which
defines the extent of the claim under it, is color of title." *Rus-
sell* v. *Tennant*, decided at the present term of this Court and
reported in 63 W. Va. 623, is a case exactly in point, where
it is held, (Syllabus, Pt. 6): "A void deed, executed by one

tenant in common to another, though inoperative to pass title, and, whether regarded as constituting color of title or not, is sufficient to prove a disseizen of the party who executed it. It being a written memorial of a hostile claim asserted by the grantee and notice thereof on the part of the grantor." In 1 Cyc. 1087, it is said: "Great conflict of authority as to whether a deed which is void on its face will give color of title. The decisions on this question seem to be fairly well balanced." It is there further said, however: "A deed which purports to convey title will give color of title although it be not acknowledged, or though it be defectively acknowledged." Citing *Reddick* v. *Lonh*, 27 So. 402; *McInerny* v. *Irvin*, 90 Ala. 275, 7 So. 841; *Watson* v. *Mancill*, 76 Ala. 600; *Cramer* v. *Clow*, 81 Iowa 255, 47 N. W. 59, 9 L. R. A. 772; *Campbell* v. *Laclede Gas Co.*, 84 Mo. 352; *Dalton* v. *St. Louis Bank*, 54 Mo. 105; *Union Sav. Bank* v. *Taber*, 13 R. I. 683. In *Pearse* v. *Owens*, 3 N. C. 415, it is held that a deed executed by a married woman without privy examination having been taken furnishes color of title. But why cite authorities from other states when it has been so clearly and definitely decided by our own Court. The circuit court erred in holding that said shares of Bradley and Nichols did not vest in Caroline Ritz by virtue of said deeds and the adverse possession thereunder.

As to the deed of Caroline Ritz to Annie M. Ritz, which is attacked by all the appellees on the ground that it was obtained by fraud, duress and undue influence. It is insisted by appellees that the commissioner upon the evidence in the case having reported that the said deed should be held null and void, and that upon an exception to the finding of the commissioner's report the circuit court examined all the evidence touching that question and sustained the commissioner's report and held the deed null and void, that such finding of the commissioner and the court is conclusive upon this Court unless it appears to be against the plain preponderance of the evidence. Citing *Weaver* v. *Akin*, 48 W. Va. 456, (37 S. E. 600); *Wolf* v. *Bank*, 54 W. Va. 689, (47 S. E. 243).

What are the the facts touching this matter of the execution of this deed of February 29, 1896? Caroline Ritz and her daughter, Annie, were occupying this property and the

old lady concluded that she would convey it to Annie. She went to the law office of Atkinson & Flick and requested Atkinson to prepare a deed for the property transferring the same to Annie. Atkinson was asked as a witness whether or not she comprehended the nature of the business they might be transacting, and answered, "Undoubtedly she did." He states that she wanted to give the property to Annie without reservation, that he advised with her in regard to the matter fully and says he remembers of explaing to her distinctly that she had other children who would naturally claim an interest in the property and they might feel aggrieved in case she gave it all to Annie, and that she should think carefully before she decided to make the deed; that he advised her how the property would descend under the law to her heirs and that Annie would only receive her individual interest, but she insisted that she wanted to give it to Annie. He further says he induced her to reserve her life estate in the property that she might control it while she lived; and when asked whether in his opinion the deed was executed with perfect free will and full command of her mental faculties in every way and realizing the relation she bore to the others of her children and relatives, answered: "There was no question in my mind at that time but that the old lady deeded that particular property to Annie because she specially desired to do so, and as to her mental capacity at the time, I have no doubt whatever she was in her right mind and talked to me freely and intelligently on the subject." When asked whether or not she was at the time of executing the deed under the dominion of anyone, answered, "I do not think she was." He was further asked whether or not she was placed in bodily fear of any one at the time, and answered, he could not believe that she was.

There is no allegation in the pleadings of her want of capacity or incompetency to execute the deed, nor is there any evidence tending to show want of mental capacity, and certainly nothing in the evidence to prove such. There is no evidence even tending to show that there was any undue influence brought to bear upon the grantor at the time of executing the deed, but on the other hand it is clearly shown that she did it of her own choice and even showed a purpose to convey it without any reservation and would have done so

if her attorney had not insisted on her reserving control. Witness J. B. Wilson testifies that during the period covered by his testimony Mrs. Ritz appeared to be in reasonably good health and able to go about the house and to his office and seemed to have all her faculties and talked business with him very intelligently and knew what she was about when she was talking to him.

It is sought to make the case of the appellees by proving the declarations of Mrs. Ritz, especially after the making of the deed; that she threatened to take steps to have the deed set aside because her daughter, the grantee, abused her and did not treat her right, and to make it appear that she was induced to make the deed through fear that Annie would do her violence. It is shown that Annie had a very violent temper which seemed to be quite uncontrolable, and would sometimes drive her mother from home and even sometimes assaulted her, and they quarrelled a great deal, the quarrelling being principally on the part of Annie. John Welty, who conducted a barber shop in the Ritz Building from December, 1881, to April, 1894, was asked whether during that period while he was in the property he heard any difficulty or quarrelling between Annie and her mother, and answered, "Oh, sometimes they would fuss around a little and row a little bit." When asked what sort of a row, answered, "Oh, scolded one another. Annie she did most of the talking." When asked to give any of the words he said, "Annie would swear around there sometimes and called the old woman a damned old fool, or something like that." And said "The old lady was a pretty good jawer herself when she took a notion." "The old lady would complain about Annie and tell how she had done and then Annie would complain about how the old lady done."

The authorities seem to be uniform that to avoid a deed as having been procured by undue influence, such undue influence must be directly connected with the execution of the deed, and the declarations of the grantor, made either before or after the execution of the deed, are not admissible for the purpose of impeaching the same. *Guild* v. *Hull*, 126 Ill. 523; *Woodruff* v. *Cook*, 25 Barb. 505; *Julian* v. *Reynolds*, 8 Ala. 680. In *Brock* v. *Brock*, 92 Va. 173, it is held: "Declarations of an assignor made after assignment are not

admissible in evidence against the assignee." In *Dinges* v. *Branson*, 14 W. Va. 100, (Syl. Pt. 2), it is held. "The declarations of a testator, or grantor, made either before, or after, the execution of the instrument, are admissible evidence, where the issue involves the mental capacity of the testator, or grantor, at the time the instrument was executed, or undue influence exerted over him at that time."

It will be observed that it is only admissible when the question of mental capacity is involved or undue influence asserted at the time of the execution of the deed. In the *Dinges - Branson Case*, just cited, at page 105, after citing several cases, the Court says: "In many other cases objections have been made to the introduction of such evidence; and the question as to its admissibility expressly adjudicated."

In *Comstock* v. *Hadlyme Eccl. Society*, 8 Conn. 254, it was held "that when declarations of the testatrix, tending to show importunity and undue influence, made *about* the time of executing the will, were given in evidence; such declarations were admissible only to show the testatrix's state of mind, and not to prove the *facts* stated." *Kane.* v. *Kinne et al.*, 9 Conn. 102. To set aside a deed for undue influence, it must be shown that the grantor at the time of its execution stood *in vinculis* or that the undue influence was such as to destroy free agency and substitute the will of another for that of the person nominally acting. *Delaplain* v. *Grubb*, 44 W. Va. 612, 30 S. E. 201, 67 Am. St. Rep. 788; *Erwin* v. *Hedrick*, 52 W. Va. 537, (44 S. E. 165); *Farnsworth* v. *Noffsinger*, 46 W. Va. 410, (33 S. E. 346); 16 Cent. Dig., cols. 250-277, secs. 190-199; 13 Cyc. 585.

Although the grantor, Caroline Ritz, lived seven years after the execution of the deed, she took no proceeding to have it set aside. The circumstances of the case all tend to show a fixed purpose in her mind to let her daughter Annie have the property. The record shows that she realized that Annie's mind was not sound and that she would need to be cared for in her afflicted condition, her other children were all married and doing for themselves, and she evidently felt it her duty to make provision for her care and support. Although her daughter treated her very harshly she retained her motherly instincts and, while she was annoyed almost beyond endurance at times by the conduct of her daughter,

she was enabled to make due allowance for Annie's conduct. And when Annie was arrested as a lunatic her mother gave bond to keep her at home rather than see her sent to an asylum or sanitarium.

For the reasons herein stated the decree of the 9th of November, 1906, complained of is reversed, set aside and held for naught and the cause remanded to the circuit court of Ohio county with directions to divide the net proceeds of the sale of the property sold in this cause to Ella D. Robinson: to John W. Adams, committee of Annie M. Ritz, six-eighths thereof, being the five-eighths conveyed to her by Caroline Ritz by deed of February 29, 1896, and the one-eighth inherited by said Annie from her father, John Ritz; to the plaintiffs, one-eighth; and to Ella D. Robinson, one-eighth; and in the distribution thereof due regard must be had to the partial distribution of a part of the funds heretofore distributed under former orders and decrees entered in this cause; and that the appellees, other than the defendants Ella D. Robinson and W. P. Robinson, to pay to the appellant the costs of this appeal.

*Reversed.      Remanded.*